CASE 20—AGREED CASE—MAY 5.

# Masonic Savings Bank v. Bangs' Adm'r.

APPEAL FROM LOUISVILLE CHANCERY COURT.

84   135
e112  741

84   135
f123  149

1  WHERE SECURITIES ARE PLEDGED TO A BANKER for the payment of a particular loan or debt, he has no lien on the securities for a general balance, or for the payment of other claims.

In this case appellee's intestate, to secure the payment of a note for borrowed money, pledged to appellant some shares of stock in a corporation, and authorized the bank, by indorsement on the note, to sell the stock if the note was not paid at maturity. After the death of the pledger the bank, with the consent of his administrator, sold all the stock, and the proceeds being more than sufficient to

satisfy the particular note to secure which the stock was pledged, the bank, having other claims against the estate, claims the right to apply the surplus to their payment. *Held*—That the surplus is for distribution among general creditors. The bank is not entitled to a lien thereon, or to a set-off against the claim of the administrator, the claim not being for a debt due the intestate.

2. WHERE THE PERSONAL ESTATE OF A DECEDENT IS COVERED BY A LIEN giving a creditor priority, the residue, after satisfying the lien, must be paid to other creditors until they have received a sum equal *pro rata* with the lien creditor. This statutory provision applies to all liens created on the personal estate, whether by operation of law or by express contract between the parties.

HELM & BRUCE FOR APPELLANT.

1. A banker has·a lien upon any securities in his hands to cover any general balance, unless the circumstances under which the pledge was made. or the language of the pledge itself, is of such a character as necessarily to restrict the pledge to a particular debt. (Story on Agency, sections 362, 362*a*, 363 and 380; Morse on Banking, pages 42 and 43; Metropolis Bank v. New England Bank, 1 How., 369; 6 How., 212; Kelly v. Feland, 5 Dillon, 228; Lucas v. Darrien, 7 Taunt., 278; Wilson v. Smith, 3 How., 763; Brandar v. Barnett, &c., 12 Clark & Finnelly, 806; Davis v. Bowsher, 5 Term Rep., 491; Boland v. Bygrave, 21 Eng. Com. Law Rep., 437; General Provident Assurance Co. Case, Law Reports, 14 Equity, 516; *In re* Haselfoot's Estate, Law Rep., 13 Eq., 327; Spalding v. Thompson, 26 Bevan, 637; *In re* European Bank. Law Rep., 8 Ch. App., 44.)

Authorities explained: Story on Bailments, 9th edition, sections. 304 and 305; Vanderzee v. Willis, 3 Brown's Ch'y, 21; Duncan v. Brennan, 83 N. Y.; Wyckoff v. Anthony, 90 N. Y., 448; Neponset. Bank v. Leland, 5 Met.; Jarvis v. Richards, 15 Mass.; Hathaway v. Fall River Bank, 131 Mass.; 2 Leigh., 493; Green v. Farmer, 4 B. R.; Talbot v. Fare, 9 Ch. Div., 568.

2. Waiving the question of lien, in this case the bank is entitled to set off its demands on the intestate against the claim of the administator, both claims arising in the same right. (Ely v. Herne, 5 Dana, 402; Warfield v. Gardner's Adm'r, 79 Ky., 586; Clark v. Iselin, 9 B. R., 19; S. C., 11 B. R., 337; S. C., 10 Blatch., 204; S. C., 21 Wall., 360; *In re* Don *et al.*, 14 B. R., 307; Sparhawk v. Drexel, 12 B. R., 450; *In re* Farnsworth, Brown & Co., 14 B. R., 148; S. C., 5 Biss., 224.)

W. O. & J. L. DODD FOR APPELLEE.

1. If securities have been deposited with a banker as a pledge for a specific sum, and not as a pledge generally, that will repel the infer-ence that they were intended to give a lien for the general account or balance between the parties. (Story on Bailments (9th edition), sec-

Masonic Savings Bank v. Bangs' Adm'r.

tion 304; Story on Agency (8th edition), sections 362, 380 and 381; Parsons on Contracts (6th edition), volume 3, pages 364-5; Kent's Com., volume 2, page 775; Smith's Mercantile Law, page 695; Dos Passos on Stock Brokers and Stock Exchanges, page 705; Morse on Banking, page 42; Grant on Banking, page 168; Myers' U. S. Cases on Banks, pages 145, 150; Story's Eq. Juris (10th edition), section 1034; Metropolis Bank v. New England Bank, 1 How., 239; Duncan v. Brennan, 83 N. Y., 487; Wyckoff v. Anthony, 9 Daly, 423; Wyckoff v. Anthony, 90 N. Y., 448; Gould v. Farmers' Loan and Trust Co., 23 Hun., 322; Gould v. Central Trust Co., 6 Ab. New Cases, 381; Neponset Bank v. Leland, 5 Met. (Mass.), 259; Jarvis' Adm'r v. Rogers, 15 Mass., 369; Hathaway v. Fall River National Bank, 131 Mass., 14; Galliat v. Lynch, 2 Leigh., 493; James' Appeal, 89 Penn., 56; Baldwin v. Bradley. 69 Ill., 35; Southworth Co. v. Lamb, 82 Mo., 242; Vanderzee v. Willis. 3 Bro. Ch'y, 20; Jones v. Smith, 2 Ves., Jr., 372: Davis v. Bowsher, 5 Tenn. Rep., 491; Brandar v. Barnett, 12 Clark & Finnelly; Green v. Farmer, 4 Burr., 2214.)

2. The principle of set-off does not apply to this case. (General Statutes, chapter 39, section 30; Lane v. Bodley, 47 Barb., 395; Talbott v. Frere, 9 Ch'y Div., 568; Hamilton v. Wagner, 2 Mar., 334; Cole v. Cole's Adm'r, 4 Bibb, 340; Prentice v. Burton, 3 B. Mon., 35; Bonta v. Curry, 3 Bush, 678; Civil Code, sections 637, 638 and 639.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

John B. Bangs, in the month of June, 1884, borrowed of the Masonic Savings Bank the sum of ten thousand dollars, for which he executed his note, payable in six months with interest from date, and to secure its payment he pledged as collateral security three hundred shares of the stock of the New Galt House Company. The nature of the pledge was indorsed on the back of the note, and is as follows: "As security for the payment of the within note, I have deposited with the Masonic Savings Bank three hundred shares of the capital stock of the New Galt House Company, and authorize the said bank to sell the above described collaterals, and pass a good title thereto to the purchaser, if the

within note is not paid at maturity, reserving the right to be notified in writing twenty days previous to the date and place of the contemplated sale.''

Bangs, the obligor in the note, died intestate in August, 1884, and the appellee, W. C. Kendrick, administered on his estate, and in order to a settlement with creditors filed a petition in the Louisville Chancery Court, to which the appellant (Masonic Savings Bank) was made a defendant. The estate of Bangs was not only involved but utterly insolvent.

The Masonic Savings Bank being a large creditor of the estate, filed an answer and counter-claim, setting forth its various demands, and among them the note for ten thousand dollars. A judgment was asked by the bank for the sale of the stock pledged to secure the payment of that note. The administrator and the bank consented by an agreed order that the bank should sell the stock, subject to the rights of the parties in interest.

The stock was sold by the bank and realized, after the payment of all costs, the sum of thirteen thousand four hundred and ninety-five dollars and ten cents. This sum satisfied the note, and left a surplus of three thousand five hundred and thirty-six dollars and forty five cents, and the manner in which this surplus is to be distributed is the question presented on the appeal.

The bank, holding many other large claims against the estate, asserts its right to apply this surplus to their payment, insisting that by the law merchant it has a lien over other creditors, and if not, having possession of the fund, its right to a set-off against the claim of the administrator can not be denied.

We find no decision by this court determining the question involved; but the right of a bank to a general lien on the money and funds of the depositor in its vaults .for the payment of the balance of the general account of the depositor, is recognized by all the elementary books on the subject of banks and banking, and sustained by an unbroken line of American decisions. So when the depositor is indebted to the bank, his funds in the bank may be applied to the payment of the debt at its maturity, and a failure of the bank to make such an application has been held to discharge the indorser or sureties.

The right to a set-off would also exist against the administrator or representative of the depositor attempting to recover the deposit after his death. (Morse on Banking, pages 34, 35, 36.)

This doctrine as to the general lien of a bank, or its right to a set-off, does not control the question involved in this case.

It is equally as well settled that when the deposit is made for a special purpose, with the knowledge and undertaking of the bank, that purpose must be carried out; or when the pledge is specific to secure a particular debt, the lien only applies to the debt intended to be secured by it. "A security given for a contemporaneous advance of one thousand pounds by the banker, was held not to be applicable against an indebtedness of five hundred pounds, afterwards arising on the ordinary running account." (Morse on Banking, page 36.)

In this case the intestate deposited with the bank three hundred shares of the New Galt House stock,

to secure the payment of the note for ten thousand dollars. The title to the stock was in the intestate, subject to this pledge, and the bank had no right to sell more of the stock than would satisfy the debt it was given to secure. If two hundred shares had satisfied the debt, the intestate, if living, could have maintained an action against the bank for the remaining one hundred shares. The debt having been paid, the pledgeor or owner would have been entitled to the immediate possession of the stock remaining unsold.

The administrator of Bangs consented that the whole of this stock might be sold by the bank, and when sold, the special pledge having been satisfied, the surplus fund arising from the sale passed to the administrator. It was the property of the estate, and its conversion into money did not alter the rights of the parties. If the appellee, as the administrator, had paid off the ten thousand dollar note, the whole of the stock would have belonged to the estate, and no lien could have been asserted against the administrator so as to have prevented a distribution among the general creditors.

The special agreement with reference to the particular debt repels the inference that it was pledged for any and all debts that might thereafter be owing the bank by the intestate. In Parsons on Contracts, volume 3, pages 264, 265, the lien of the banker is thus stated: "When a negotiable note is indorsed to a banker by the payee as collateral security for one only of several demands for which he is liable, the banker has no lien on such note as security on any other demand against the indorser."

Kent in his Commentaries, volume 2, page 775, states the rule: "The pawnee will not be allowed to retain the pledge for any other debt than that for which it was made, even though the holder be a banker."

In Duncan v. Brennan, 83 New York, 487, it was held that personal property pledged for a particular loan can not, in the absence of a special agreement, be held by the pledgee for any other advance; and in that case it was also said that "the general lien which bankers have upon bills, notes and other securities deposited with them for a balance due on general account, can not exist where the pledge of property is for a specific sum and not a general pledge."

In the case of the Neponset Bank v. Leland, 5 Met., Mass., 259, it was adjudged, that "where a negotiable note is indorsed to a bank by the payee as collateral security for only one of several demands on which he is liable, the bank has no lien on such note as security for any other demand against the indorser."

In the case of Wyckoff v. Anthony and others, reported in 90 New York, 442, the bonds in controversy were pledged by the plaintiff as collateral security for a note of eight thousand dollars. The plaintiff tendered the firm the amount of the debt and interest, and demanded the securities. The defendants refused to deliver them unless the plaintiff would pay another claim of the defendants against the plaintiff, for which the bonds had not been specifically pledged.

The plaintiff then brought his action for the value of the bonds, alleging their conversion by the defendants. It was held, that "where securities are pledged to a banker or broker for the payment of a particular loan or debt, he has no lien on the securities for a general balance, or for the payment of other claims," and a recovery was permitted.

We have found no case decided by the courts of this country sustaining the position assumed by counsel for the appellant, and the English cases relied on, particularly the case of Davis v. Bowsher, 5 Term Rep., 481, decided by Lord Kenyon, states the rule to be, that by the general law of the land a banker has a general lien upon all the securities in his hands belonging to any particular person for his general balance, unless there be evidence to show that he received any particular security under special circumstances, which would take it out of the common rule.

This general lien arises from the usage of trade; and the fact that the parties have made the pledge for the particular debt, must be held to exclude the intention of creating or relying on a lien that would otherwise exist upon the general deposit account. It is a special deposit or pledge for a special purpose, and when that purpose is accomplished the lien ceases to exist. A general lien in such a case would be inconsistent with the special undertaking. (Grant on Banking, page 168.)

Counsel on each side in this case have bestowed much labor in presenting and reviewing the authorities on this question, and while some of the Eng-

lish cases would tend to sustain the claim of lien, the whole current of American authority is against such a doctrine.

Nor is the appellant entitled to a set-off, either at law or equity, against this claim of the administrator. Mutual debts existing between the intestate and the bank might be set-off by the bank either at law or equity, but in this case there was no debt due the intestate. The latter was liable to the bank for a large sum of money, and had pledged his stock in a corporation to pay a part of the debt only. The stock was not converted by the bank into money during the life of the intestate, and no lien, legal or equitable, existed on the part of the bank outside of the pledge. The stock was the property of the intestate in the possession of the bank, and at his death the title vested in his personal representative. If Bangs had mortgaged his personal property to secure this debt, a satisfaction of the mortgage debt by a sale of a part of the personalty would have left the intestate entitled to the remainder free of any incumbrance by reason of the mortgage, and the pledge by a delivery of the possession of the stock to the bank only invested it with an equity to the extent of the pledge made. Equitable rights might have arisen as between the intestate, if living, and the bank, entitling the latter to some of the provisional remedies authorized by the Code; but here the personal assets, after satisfying the lien, vested in the administrator, and the specific lien having been removed, the surplus is for distribution

between creditors as provided in sections 33 and 34 of art. 2, chapter 39, General Statutes.

When the personal estate is covered by liens, giving a creditor priority, the residue, after satisfying the lien, must be paid to other creditors until they have received a sum equal, *pro rata*, with the lien creditor. This statutory provision applies to all liens created on the personal estate, whether by operation of law or by express contract between the parties. (Spratt v. First National Bank of Richmond, 84 Ky., 85.)

This estate, being insolvent in any event, the bank must stand back until the other creditors are made equal to the lien asserted and allowed 'it by reason of the pledge.

The judgment below conforming to these views must be affirmed.