Samuel Murphy and Harry W. Pentecost, *as administrators of the estate of Francis R. McKennon, Deceased,* v. Harry Colton, Jennie Colton, August Frank and Thomas J. Taylor.

1. Set-off—*Presentation to Administrator Not Necessary.* It is not a pre-requisite to the setting up of a set-off to a suit by the administrators of the estate of a deceased person, that the claim based upon the matters constituting the set-off should have been presented to the administrators. And this is true, even though the person presenting the set-off claims by his answer a balance over against the estate. The set-off is still good as a defense to an extent not to exceed the claim of the estate against the defendant.

2. Set-off—*Mutuality.* Under the 1890 Code of Procedure in this territory mutuality was essential to a set-off, and one of two defendants sued jointly could not set off against the plaintiff's claim an account of the plaintiff due to one and not both of the defendants.

3. Witness—*Competency of.* A person who is sued, with other defendants, by the administrators of a decedent, as a defendant in the action, wherein it is alleged by the plaintiffs that the person testifying had assigned to the deceased person all his right, title and interest in and to the claims and property in controversy, and where the witness comes into the action and disclaims any interest therein, he is not disqualified to testify in the cause in behalf of the remaining defendants, he having at the time no interest in the matters in controversy.

4. Voluntary Finding Not Reviewed. A voluntary finding of the court made upon certain facts, but not all of the facts of the case, and not made at the request of either party and not reduced to writing, cannot be considered as a special finding of fact, and will not be reviewed on appeal.

5. Judgment—*Sufficiency of Evidence.* The judgment of a court based upon conflicting evidence, where there is evidence to support the general finding and decision made, will not be reversed.

6. Argument—*Rule Applied.* It is within the discretion of the court to limit the argument of counsel in a civil cause, and it is not reversible error to exercise such discretion unless abuse of it is shown, and *held,* that it was not an abuse of that discretion to limit the argument in this case to fifteen minutes.

*Error from the District Court of Logan County.*

Francis R. McKennon filed his suit in the district court on October 18, 1891, to foreclose a lien in the

nature of a mortgage upon the one-half interest of Harry Colton and Jennie Colton in lot 26, block 60, in the city of Guthrie, and to quiet title to the lot as to August Frank and Thomas J. Taylor.

It appears from four different contracts which were made between Francis R. McKennon, Thomas J. Taylor and Harry and Jennie Colton, on the 25th of October, 1889, April 21, May 21 and August 4, 1890, all of which related to the same subject matter, the subsequent ones of which were amendments of the former: That Harry Colton and Jennie Colton were on October 25, 1889, in possession of lot 26, block 60, in the city of Guthrie, which was then a government townsite, and on which they had some improvements and had started to erect a building; That McKennon on that day loaned to the Coltons the sum of two hundred and fifty dollars, to be repaid in six months, and took a quit-claim deed to the lot.

By the terms of the contracts entered into McKennon was to furnish the money to erect a building on the lot, and the Coltons were to have one-half interest in the lot and building, McKennon one fourth interest, and Taylor one-fourth interest. Taylor was to repay to McKennon one-fourth of the expense of the building, and the Coltons were to repay to McKennon one-half of the expense of the building above the sum of nine hundred and twenty-two dollars, and McKennon was to hold a first lien on the property for these amounts.

It was also further agreed that if McKennon erected a building on the adjoining lot, in connection with the one erected on lot 26, he was to pay his proportionate share of the expense of the second story which the twenty-three feet of lot 26 would bear to the twenty-seven feet

of the other lot, and to have that proportionate interest in the upper story of the combined buildings.

The contracts also provided that the Coltons were to, and it appears they did, lease another building of McKennon, known as the Noble hotel, and the agreements provided that the rentals due and to become due, and the two hundred and fifty dollar note should also be a lien on the Coltons' interest in lot 26, and the building to be erected thereon.

McKennon erected the building, which was completed and ready for occupancy in August, 1890. He always held possession of the building, and paid for the repairs and taxes, and received all the rentals therefor, occupying by himself and his agents as office rooms and an opera house, the upper story, and leasing out the lower portions.

Before the suit was brought Taylor assigned all of his right, title, claim and interest in and to the property and under the contracts, to McKennon.

The suit was to foreclose this lien, and McKennon claimed that the Coltons owed him, and which he claimed should be a lien on the building, one-half of the sum of thirty-four hundred and fifty dollars, which was the expense of the building on lot 26, less nine hundred and twenty-two dollars, the amount of this item being seventeen hundred and twenty-five dollars. Also that they owed fourteen hundred and eighty-two dollars rent, and the two hundred and fifty dollar note, and for repairs and taxes. McKennon admitted the receipt of a large amount of rents, of which sum he stated that seven hundred and twenty-four dollars should be credited upon the charges against the Coltons.

August Frank, who claimed some interest in the property, and Taylor were made parties to the suit to quiet

title. Taylor, by his answer, disclaimed any interest, and August Frank set up a mortgage in the sum of eight hundred dollars, and the Coltons admitted the contracts, but denied any indebtedness to McKennon, claiming that the building had not cost more than nine hundred and twenty-two dollars, and that whatever the cost was McKennon had collected rents largely in excess of it, and also set up as set-offs a due-bill to Mrs. Colton in the sum of one hundred and fifty dollars, two board bills due Harry Colton, one of Fred Elkin, ordered by McKennon, and the other of F. R. McKennon himself, the two amounting to eighty-five dollars; and on the trial a set-off of forty-six and forty-nine one-hundredths dollars for lumber was set up. There are some other matters stated in the Coltons' answer, but not relied upon on the trial, and need not be stated. The Coltons asked for an accounting, and the balance of their judgment for rents against McKennon.

In January, 1893, McKennon died, and Samuel Murphy and Harry W. Pentecost were in February duly appointed, and duly qualified, as administrators, and they prosecuted the action.

Upon the trial, judgment was rendered for the plaintiffs for the sum of one hundred and twenty-nine and forty-two one-hundredths dollars, which was declared to be a first lien on the property. And August Frank was given a second lien for his mortgage, there being no controversy between him and the Coltons. From this judgment the plaintiffs appeal. Reversed.

*Fred M. Elkin* and *C. R. Redick*, for plaintiffs in error.

*Harper S. Cunningham* and *Green & Strang*, for defendant in error.

The opinion of the court was delivered by

BIERER, J.: On the trial the plaintiffs objected to any evidence on the defendants' set-offs, consisting of a due-bill of one hundred and fifty dollars made to Mrs. Jennie Colton by F. R. McKennon, the board bill of Harry Colton against McKennon, and the lumber bill of forty-six and fifty-nine one-hundredths dollars due to the Coltons from McKennon, because it was not alleged, and no proof shown, that these claims had ever been presented to the administrators as claims against the estate of F. R. McKennon.

McKennon died in January, 1893. The administrators qualified in February, 1893, and this suit was tried in November, 1893, and it is insisted that the presentation of these claims to the administrators was a pre-requisite to setting them up as set-offs against the claim of McKennon.  Section 1312, 1318 and 1320, of the Compiled Laws of 1893, of this Territory, are relied upon in support of this contention.

Section 1312 provides, with some exceptions, which do not include this case, that if a claim arising upon a contract be not presented within the time limited in the notice to the administrators it is forever barred.

Section 1318 provides that if a claim is rejected, either by the administrator or the judge of the probate court, suit must be brought thereon within three months after the date of the rejection or it is barred.

Section 1320 provides:

"No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator."

Now, if this were an action brought against the administrators upon these claims against the estate of F. R. McKennon, the position of counsel for appellant would

be well taken. But these items are set up as a set-off to McKennon's claim, and no judgment for any balance was given against McKennon's estate.

Section 4391 of the Statutes of 1890, under which this action was brought and tried, provides:

" When cross demands have existed between persons, under such circumstances that one could be pleaded as a counter-claim or set-off to an action brought upon the other, neither can be deprived of the benefit thereof by the assignment or death of the other and the two demands must be deemed compensated so far as they equal each other."

We cannot see any reason, under these statutes, why a party who does not want to rely upon having a balance of claim established against the estate of a decedent, where the estate has a claim against him, might not refrain from the presentation of his claim to the administrators, and still hold the same as a set-off against the claim of the estate should it be asserted against him.

The three sections referred to, from the probate law, do not prevent such procedure, and § 4391, which is from the Code of Procedure, plainly authorizes such action.

It is true the Coltons did, in this case, claim a balance in their favor, but they did not recover any balance. They have, therefore, maintained no action upon any claim against the estate, but have simply presented proof that they did not owe the estate the amount claimed, because they had a just set-off to the claim of the estate.

Suppose McKennon had never furnished for the Coltons' benefit any money beyond the two hundred and fifty dollars, and that the Coltons had a just account against McKennon to the full amount of this two hundred and fifty dollars, and accruing interest, and they had never had any settlement. In such case, of course,

their claims would be evenly balanced, and neither would be a debtor.

Suppose the Coltons, considering the accounts were even, should have let the matter rest in that way, as the parties no doubt would have done had McKennon lived, and the time for presenting claims against the estate had expired, and the estate had then sued the Coltons on the note. Could it be claimed that, under these statutes, they could not show that the note was, in fact, settled by the account of McKennon due to them, and that it, in fact, had been settled long before McKennon's death? Such a position would be absurd as well as absolutely untenable, not only in the face of the statutes, which would protect rather than injure the Coltons, but without them.

But there is a second objection to part of these items of set-off that is a more serious one, and that is that the Coltons cannot set-off against the claim of McKennon individual accounts due to one and not to both of the defendants sued. The action of the estate of McKennon against the Coltons is one against them jointly, in which they are sued upon a joint contract, on which both are liable.

The accounts that were offered and admitted over plaintiffs' objection as set-offs were the due-bill of one hundred and fifty dollars due to Jennie Colton, the board-bill of eighty-five dollars due to Harry Colton, and the lumber bill of forty-six and fifty-nine one-hundredths dollars. It is claimed by the plaintiffs that these were all individual accounts, and it appears so as to the first two, but not as to the latter.

The manner of stating the set-off for lumber by defendants' counsel, and some of the testimony given would seem to indicate that this was a claim of Henry Colton's, but the plaintiffs moved to strike out the evidence relat-

ing to this claim of forty-six and fifty-nine one-hundredths dollars "alleged to be due from McKennon to defendants Coltons for lumber," showing that the plaintiffs took the claim on the trial to be one due both the Coltons; and the evidence is that this amount was due for lumber which had been purchased to build the building, and was on hand at the time of its completion, and was sold by McKennon. This, of course, was lumber for which both of the Coltons had been charged by McKennon and both of the Coltons would have an equal interest in the overplus of lumber, and this item shows that it is for one-half of such lumber. It was, therefore, an account with both of them, and not with Harry Colton, as plaintiffs contend.

The other two items, however, were separate accounts, and not due to the defendants jointly, but due to them separately, one to Mrs. Colton and one to Harry Colton.

There is quite a difference of authority upon the question as to whether accounts due one of two or more defendants can be asserted as set-off in a suit against all of the defendants, some authorities holding they cannot, whether the liability of the defendants is joint or several; and some holding that they can be, where the liability is a several one; and some holding that they can be, whether the claim against the defendants, or the persons so asserting the set-offs, is either joint or several.

The matter, however, is easily determined by recourse to decisions which, upon questions of this character, must always be controlling. This is a matter of procedure, and this cause was brought and tried under the 1890 Code, which, as many times before stated, was the Indiana Code, adopted into the procedure of this Territory. The question was well settled there before the adoption here of the Indiana Code.

In the case of *Knour et al. v. Dick*, 14 Indiana, 20, the supreme court affirmed the decision of the lower court sustaining a demurrer to a plea of one of the defendants, which set up a set-off due to him from the plaintiff. And the rule was declared.

" Except where the Code has otherwise provided, mutuality is essential to a set-off. "

The decision, which is very brief, shows that it is based upon the theory that in the absence of a Code establishing a different procedure, the rule is that mutuality is essential to the asserting of a set-off of one debt against another.

And § 58 of the Indiana Code, as it then existed, which is § 4388 of our Statute of 1890, is there quoted as changing the rule with reference to actions upon a note or other contract against several defendants, in which one is principal and the other sureties, and which allowed the principal in such case to assert a set-off against the plaintiff. And under this same provision it was held, in *Harris v. Rivers et al.* 53 Indiana, 216, that:

" In an action upon a contract against two or more defendants, a claim in favor of one of the defendants cannot be pleaded by him as a set-off, without alleging that he is the principal in said contract and that his co-defendants are sureties therein. "

And this same doctrine was affirmed in *Lynn et al. v. Crim*, 96 Indiana 89, where the note in the suit was held to be a joint and several note of the defendants. This last case cites the section from the Indiana Statutes of 1881, from which the code as adopted in this Territory was taken, and also cites *Harris v. Rivers et al.*, and subsequent decisions of that state on the same question.

These decisions must be taken as conclusive, and settle the question in favor of the plaintiffs in error as to the

account of Mrs. Colton for the one hundred and fifty dollar due-bill, and of Harry Colton of the eighty-five dollars for the board-bill.

The plaintiffs urge that the judgment must be reversed because Jennie Colton was allowed to give testimony over the objection of the plaintiffs as to her competency. The ruling on the last question makes it unnecessary to pass upon this, because the only material matter in her testimony related to the two questions of set-off, which we have held were improper items.

T. J. Taylor was a material witness for the defendants, and testified at length concerning the transactions had between himself, the Coltons and McKennon, concerning the erection of the building in controversy. Objection was made to his competency, and it is urged that he was incompetent because he was a party to the suit, and because his testimony was with reference to personal transactions and communications had between himself and the deceased. The objection is untenable.

The law which is relied upon as a basis for this objection is part of § 4529 of the Statute of 1890, which provides:

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be competent witnesses as to any personal transaction or communication had with the deceased."

It is true that Taylor was, at one time, a party to the suit. The suit was brought against him, however, only to quiet title to the lot, and it was alleged that he had no further interest in it, and he had come into the action

and disclaimed any and all interest.    He was therefore no longer a party to the issue or record.    Besides this, he had no interest whatever adverse to the estate, and this we take to be the pith of such an objection to the competency of the witness.    It is the real and true ground upon which this statutory objection to the competency of the witness is based, and the witness not being a party to the record when the testimony was given, and having no interest adverse to the estate, he was not incompetent to testify.

Numerous errors are assigned as to the alleged special findings of the court, and because the court trying the cause did not find for the plaintiffs in a much larger sum than that found to be due.

It is claimed that·the court made some special findings which are in conflict with all the evidence in the cause.    This would appear in one instance, if we could take what is stated in the record as a special finding of the court.    For instance it is stated "that Mr. and Mrs. Colton should be allowed upon their due-bill and board-bill the sum of four hundred and eighty-two dollars and twenty-five cents."    If we could take this as true it would, indeed, be erroneous, because the due-bill was one hundred and fifty dollars and the board-bill, consisting of two items, one of $51.40 and the other of $33.60, the two amounting to $85, making the due-bill and board-bills amount to $235, instead of $482.25.    But we are prevented from holding that there is error committee in this, because the matters which counsel rely upon are not special findings which we can consider.

It appears from the record that after the trial of the case the court made "the following findings," and following these are a number of statements of the conclusions of the court from the evidence, among which

occurs the one referred to. But there is nothing to show that the court made any special findings of fact in the cause, and nothing to show that any special findings of fact were asked by counsel for either side to be made in writing or otherwise, or were entered of record in the cause. And these so-called findings do not cover all of the facts of the case, but only a part of them. The findings not being made at the request of either party, must be considered only as a general finding for the plaintiffs. (*Weston v. Johnson*, 48 Indiana, 1; *The Grover and Baker Sewing Machine Co. v. Barnes*, 49 Indiana, 136; *Northcutt et ux. v. Buckles et al.* 60 Indiana 577.)

And we cannot know, as a matter of law, that these matters were even considered by the court in its general decision. The finding must be regarded as a general one, and unless we can clearly see error in that, there can be no reversal on account of the findings from the evidence.

It is claimed that the decision of the court is not sustained by sufficient evidence. The particular ground, as before suggested, is that the decision of the court should have been for the plaintiffs in a much larger amount. If the court had found in accordance with the testimony of the plaintiffs' witnesses, the plaintiffs would have recovered several hundred dollars more than they did, for they put the expense of the building and the various repairs and the taxes at an amount which, after deducting the rents received, and for which the estate of MeKennon was chargable, would leave the Coltons owing about a thousand dollars. But the evidence was very conflicting as to the expense of the building, the plaintiffs' witnesses giving testimony tending to show that the cost of the building was over four thousand dollars, while the

testimony of the witnesses for the defendants would show the expense to have been very materially less, and sufficiently less to make the general finding of the court to be fully sustained by their evidence.    This evidence consisted principally of the testimony of T. J. Taylor, who testified that he superintended the stone and brick work upon the building, which was a stone and brick one, and gave figures tending to show that the amount of material used was very much less than the amount testified to by the plaintiffs' principal witness, and also that the cost of the range work in the building was $16 per cord and the ruble work $10 per cord, instead of $24.95 and $13.51 per cord respectively, as testified to by plaintiffs' witness on this question.    And also the testimony of I. S. Deford who claims to have bought lumber for the entire double building in controversy and a building of his own, for a less price than was claimed by the plaintiffs was the cost of the lumber for that part of the building on lot 26; and who also fixes a much less price on the brick than was testified to for the plaintiffs. It is simply a case of a decision upon conflicting evidence, and this court will not reverse a decision made upon such evidence.    (*Mulhall v. Mulhall*, 3 Oklahoma, 252, 41 Pacific 577; *Applegate v. Moffitt*, 60 Indiana 104; *Isler v. Bland*, 117 Indiana 457.)

Besides, there is such a confusion, and disconnected lot, of figures relating to the different matters in controversy, many of them referring to statements, bills, vouchers and contracts not in the record, that it is not only impossible for us to say that the judgment is not sustained by sufficient evidence, but we are unable to tell on what basis the trial court, which had the witnesses, with these matters, before it, arrived at its determination.

The only other error relied upon for a reversal of the judgment is the action of the court in limiting the argument to fifteen minutes on each side, made over the objection and exception of counsel for plaintiffs. It is a right of the court to regulate the proceedings of a trial, and to limit, within its discretion, the arguments to be made by counsel. We cannot perceive that any abuse of that discretion was made in this case.

For the error committed in admitting the evidence as to the set-offs of Jennie Colton and Harry Colton of their separate accounts, in the sum of one hundred and fifty dollars, and eighty-five dollars, respectively, the judgment is reversed with direction to grant a new trial, unless the defendants consent that the judgment for plaintiffs may be increased in the amount of these two items, in which event the court below will enter the judgment accordingly.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.