**FIRST NAT. BANK of ADA v. JACKSON, Ex'x.**

No. 17706. Opinion Filed Oct. 22, 1929.

Rehearing Denied Dec. 17, 1929.

J. F. McKeel and Robt. S. Kerr, for plaintiff in error.

I. M. King and John P. Crawford, for defendant in error.

DIFFENDAFFER, C. Defendant in error was plaintiff, and plaintiff in error was defendant in the trial court. They will be so referred to herein.

This is an action for the conversion of notes of $2,000 each, or the proceeds thereof. Plaintiff commenced this action on the 23rd day of July, 1924. After appropriate allegations as to her appointment and qualification as the executrix of the last will of J. F. Jackson, deceased, she alleged, in substance: That shortly prior to the month of September, 1923, J. F. Jackson was the owner of a series of five promissory notes, payable to his order, dated May 10, 1921, each for the sum of $2,000, bearing interest at the rate of eight per cent. payable semiannually, signed by Benjamin, Lena, and Sam Schienberg; that these notes were numbered from 4 to 8, inclusive; that note No. 4 was due May 1, 1925, and one each of the others was due on the 1st day of May each year thereafter, the last falling due May 1, 1929; that J. F. Jackson died testate in September, 1923 (these notes are hereinafter referred to as the Schienberg notes); that notice to creditors was duly given and published by plaintiff, beginning on the 8th day of December, 1923, and that defendant had filed no claim against the estate; that defendant was holding the Schienberg notes down to April 14, 1924, for the benefit of Jackson, or his estate; that on or about such date, defendant converted said notes to its own use and benefit by collecting the same, together with interest thereon from May 1, 1923, and had refused to pay the proceeds over to plaintiff. She prayed for judgment in the sum of $10,000, with interest at 8 per cent. from May 1, 1923.

Defendant answered by general denial, and further admitted that Jackson was the owner of the notes; admitted that Jackson died, as in the petition alleged; admitting that it collected the notes, and that it refused to pay the proceeds thereof to plaintiff; denied that it was holding the notes for the benefit of Jackson or his estate; denied that it converted the notes to its own use and benefit.

Defendant further alleged, in substance: That on May 2, 1923, J. F. Jackson executed and delivered to defendant his promissory notes as follows: One for $4,860.78, one for $3,135.91, one for $1,058.93, all due November 1, 1923, and one other note dated December 15, 1922, for $1,493.84 due October 1, 1923, all bearing interest from maturity at the rate of 10 per cent.; that J. F. Jackson had assigned the Schienberg notes to defendant by his indorsement on the back thereof, thereby transferring title to defendant; that it collected the Schienberg notes and applied the proceeds thereof to the payment of the notes of Jackson to it so far as they would go, leaving a balance of $594.47 unpaid. It then alleged:

"This defendant admits that it did not make proof of its said notes above set out

against the estate of J. F. Jackson, deceased, but says that it was not looking to the general assets of said estate for the payment of said notes and is not now looking to the general assets of said estate for the payment of said notes, and this defendant denies that the statute of limitation referred to in plaintiff's petition has any application to this case, but says that so long as there are mutual accounts and obligations between said estate and this defendant, that the same mutually compensate each other, and denies that the claim of this defendant is barred by limitation until the claim of the estate against this defendant is likewise barred."

Plaintiff replied by duly verified general denial.

With the issues thus joined, the trial court appointed B. H. Epperson referee to take the testimony and report to the court his finding of facts and conclusions of law. This order was later amended so as to direct that all the evidence taken be returned to the court, with the finding of facts and conclusions of law.

During the hearing before the referee, it was disclosed that the Schienberg notes had been indorsed by J. F. Jackson during his lifetime by writing his name on the back thereof, and that they had been turned over to the defendant. The principal point in controversy, the hearing developed, arose over the question as to how, or for what purpose, the Schienberg notes were turned over to defendant. It was, and is, the contention of plaintiff that these notes, after being indorsed by Jackson, were turned over to defendant as collateral security for one of the notes mentioned and set out in defendant's answer, to wit, the note for $3.135.91, and for no other purpose. This note, it developed, was one executed by J. F. Jackson to defendant bank, and was signed by one R. B. Smith as surety. This note is referred to in the briefs and will be hereinafter referred to as the "Bart Smith note."

It was, and is, the contention of defendant that the Schienberg notes were indorsed by J. F. Jackson during his lifetime, and turned over to defendant as collateral security for all the notes of Jackson to the bank mentioned in its answer, and particularly the three notes dated May 2, 1923, for $1,038.93, $4,860.79, and $3,135.91, respectively. The first of these notes, No. 1063, was signed by J. F. Jackson and J. H. Jackson, the next one, No. 1065, was signed by J. F. Jackson alone. The other, No. 1064, was the Bart Smith note mentioned above. When these notes were produced and offered in evidence by defendant, they were found to contain the following provision:

"This note is secured by pledge of the securities mentioned on the reverse hereof."

These notes were on blanks printed upon the face of an envelope open at one end, the front or face side thereof having an extension or "flap," which when folded over the open end of the envelope extended down over the back or reverse side of the envelope nearly two inches. On the reverse side, and at a place where it would be covered by the "flap" when folded over, was printed with a typewriter the words: "Schienberg notes."

Thereupon plaintiff pleaded surprise, contending that these words were not on the reverse of the envelope when the suit was instituted, and that they were placed there after suit was commenced, and asked and was granted leave to amend her petition. By her amendment, she pleaded, in substance, that at the time the Bert Smith note was executed, May 2, 1923, the defendant bank held no collateral security therefor, and that the Schienberg notes were not deposited as collateral security therefor at the time; that sometime in June or July, 1923, J. F. Jackson gave the Schienberg notes to defendant as collateral security for the Bart Smith note, but the words 'Schienberg notes" were not then indorsed or written on the reverse side thereof; that they were not so written or printed until after this suit was commenced, and that such subsequent placing of these words thereon was a material alteration of the Bart Smith note, thus vitiating the same.

Defendant answered this amendment by general denial, except as to the part thereof which alleged that the Schienberg notes were put up as collateral security for the Bart Smith note. The amendment not being verified, further along in the hearing, plaintiff, over the objection of defendant, asked, and was granted, leave to file an amended and supplemental reply, in which she repeated the allegations with reference to the Schienberg notes being placed with defendant as collateral security for the Bart Smith note only, and as to the indorsement of the words "Schienberg notes" on the back thereof having been placed there after the commencement of this suit and without the consent of plaintiff, and further made the same allegations with reference to the same words appearing on the reverse side of the other two notes, viz., the J. F. Jackson note for $4,860.79, and the J. F. and J. H. Jackson note for $1,058.93. This amended reply was duly verified. The hearing then proceeded as to the issues as thus joined, there appearing but two controverted questions of fact, to wit, whether the Schienberg notes were put up as collateral security for the

Bart Smith note only, as contended for by plaintiff, or were put up as collateral security for all three of the notes, as contended for by defendant, and whether or not the words "Schienberg notes" were placed on the reverse side of the three notes after their delivery to defendant, and after this suit was commenced. At the conclusion of the evidence before the referee, both plaintiff and defendant requested certain findings of fact and conclusions of law

The referee made findings of fact, consisting of some 30 separate findings. But four of these findings are on controverted questions. They were Nos. 17, 19, 20, and 22. No. 17 was to the effect that all the Schienberg notes were put up as collateral security for the Bart Smith note, referred to in the record and finding as note No. 1064.

No. 19 was that, at the time of the execution of the three notes referred to in the evidence as exhibits "A," "B," and "C" (same being notes Nos. 1063, 1064, and 1065, the three notes hereinbefore referred to as the ".J F. and J. H. Jackson," the "J. F. Jackson" and the "Bart Smith notes"), there were no indorsements or memorandum on the back thereof. No. 20 was:

"That there now appears on the back under the flap on the reverse of said Jackson notes being defendant's exhibit A, B, and C, the following memorandum which cannot be seen when the flap is down, to wit: Schienberg notes.' written with typewriter."

No. 22 was:

"That the memorandum on defendant's exhibit A, B, and C, 'Schienberg notes,' were not on said notes at the institution of this suit, but the same has been placed thereon at sometime, but the court is unable to determine the exact date; that this suit was instituted on July 23, 1924, after the maturity of indebtedness of J. F. Jackson to defendant, First National Bank of Ada."

As to finding No. 21, though not on a controverted question of fact, we think it proper to set out, since it shows clearly the state of the indebtedness of J. F. Jackson to the defendant bank at the time of his death. It is:

"At the time the Schienberg notes were put up, note No. 1064, defendant's exhibit A, J. F. Jackson was indebted to First National Bank, either as principal or as surety, on the following notes: Note No. 1064 for $?,-135.91, signed by R. B. Smith known as 'Bart Smith note,' note No. 1065 for $4,860.79, signed by J. F. Jackson, note No. 1063 for $1,058.93, signed by J. F. Jackson and J. H. Jackson, these three notes being dated May 2, 1923, and being renewals of prior notes and indebtedness which was heretofore found in this findings of facts, another note being

note No. 34014 signed by J. H. Herrin, dated December 15, 1922, for $1,493.84, this note also being signed by J. H. Herrin and J. F. Jackson as sureties."

Finding No. 17 appears to have been excepted to by defendant, but Nos. 19, 20, and 22 were not excepted to by either defendant or plaintiff. The conclusions of law returned by the referee were:

"(1) I conclude that the claim of defendant bank against the estate of J. F. Jackson was not barred so long as the claim of the estate against bank was not barred.

"(2) I conclude, as a matter of law, the writing of the word 'Schienberg notes' on the back of collateral notes was a mere memorandum made for the benefit of holder of said notes in contemplation of the parties in placing the same thereon and that the placing of the same on said notes does not vitiate, destroy, or in any way affect the validity of said notes.

"(3) I conclude that the test of a material alteration of an instrument is whether it changes or alters in any way the rights, duties, or obligations of the parties, and whether it has the same operation after as it had before the change.

"(4) I conclude, as a matter of law, that the said Schienberg notes having been put up to secure what is known as the 'Bart Smith note,' which note provides that the collateral put up to secure the same shall secure all of the indebtedness of the maker, J. F. Jackson, defendant, had a right to apply the proceeds of the Schienberg notes to all of the indebtedness of the estate of J. F. Jackson to defendant.

"(5) I conclude, as a matter of law, that where a note was pledged as collateral security, it is the duty of the pledgee to collect the same and not sell it. Excepted to by defendant.

"(6) That when the principal debt for the protection of which collateral security has been pledged has been paid, the lien of the creditor on the collateral is discharged, Excepted to by defendant.

"(7) I further conclude that, as evidence of the indebtedness has been pledged to defendant and was in their possession at the date (R. 24c) of the death of J. F. Jackson, it was not necessary for them to file their claim in the probate court unless they desired to hold the estate for a deficiency after collecting the pledge.

"(8) I further conclude that the defendant has a right to realize on the pledge, notes, after maturity of the indebtedness of which same had been pledged without going into probate court to do so.

"(9) I conclude that the First National Bank succeeded to all the right, property and interest that the Merchants & Planters

Bank of Ada had in and to the indebtedness of J. F. Jackson, deceased, and all the notes pledged therefor."

He recommended that judgment be rendered for defendant.

The findings of fact of the referee were approved and adopted in whole upon review by the court, except that part of No. 22 which, in effect, found that the words "Schienberg notes," indorsed on the back of notes Nos. 1063, 1064, and 1065, were a memorandum, which was disapproved. The court made further and additional findings of fact to the effect that the five Schienberg notes were indorsed by J. F. Jackson, two being indorsed at one time and three at another.

The conclusions of law of the referee were approved as to Nos. 1, 3, 5, 6, 7, 8, and 9, and disapproved as to Nos. 2 and 4. The court made certain conclusions of law to the effect that it was unnecessary to pass upon the question as to whether or not the placing of the words "Schienberg notes" mentioned, vitiated same, and gave as the reason therefor the fact that it was undisputed that all the Schienberg notes were pledged for the payment of the Bart Smith note, and that when the Schienberg notes were collected and the Bart Smith note discharged, the Bart Smith note had no further existence at the time said words were indorsed thereon, and therefore were without effect on either that note or the others.

The trial court concludes his findings and conclusions, as follows:

"Mr. McCauley" (the only witness testifying for defendant as to the Schienberg notes having been pledged for the payment of all three of the notes mentioned) "is contradicted by everybody that testified. To our great regret, therefore, we conclude that the pledge contract was oral, and that under its terms the Schienberg notes secured the Bart Smith note and no other, and that when the Bart Smith note was satisfied, that the defendant had no right, under the law, to hold the remainder of said funds under the banker's statutory lien law. The statute is very plain that hypothecated notes cannot be collected until they are due, and the Supreme Court of Oklahoma has so held. The defendant violated this statute when it collected this money before the notes were due.

"The statute further prohibits the sale of promissory notes placed up as collateral, but authorizes their collection only: therefore, the collection of these notes was illegal, and, therefore, the possession of the money was illegal: however, we will conclude that the plaintiff is entitled to recover the balance accruing from said notes after the Bart Smith note is satisfied, together with 8 per cent. interest, or judgment as per journal entry, to be filed herein."

After unsuccessful motion for new trial, judgment was rendered in accordance with the findings and conclusions of the trial court; that is, in favor of plaintiff in the sum of $6,864.09, with interest at the rate of 8 per cent. from November 1, 1923, from which judgment defendant appeals.

The petition in error contains 31 assignments of error. Only 14 of these assignments are mentioned in the brief of defendant. Four propositions are presented in the brief of defendant. They are:

"(1) The claim of the defendant bank against the estate of J. F. Jackson, deceased, was not barred; so long as these were mutual claims between the bank and the estate, such mutual claims offset each other.

"So long as the bank was not seeking to recover against the estate anything more than it had in its hands, there was no reason why the bank should make proof of its claim against the estate.

"(2) The amended reply of the plaintiff, filed in the midst of the trial setting up new causes of action, constituted a material departure and should not have been permitted.

"(3) The words 'Schienberg notes,' written on the back of the three notes of Jackson, which were in collateral note form, constituted a mere memorandum which any of the interested parties were at liberty to place thereon at any time, and was in contemplation of the parties at the time said notes were given and did not constitute an indorsement of said notes, as contended by plaintiff, nor did the writing of said words in any way constitute a material alteration of said notes.

"(4) The bank had a banker's lien on the Schienberg notes to the extent of any claim which it had against J. F. Jackson, and this lien was dependent upon possession."

We will not consider the propositions in the order they are presented, as we deem it proper to first consider proposition No. 2, as this question deals with the pleadings.

A careful examination of defendant's motion for new trial discloses that this question was not presented therein. It is nowhere mentioned, and we would be justified in saying that the question is not properly here. However, we conclude that, under the circumstances of this case, the amendment was properly allowed. It will be noticed that, during the trial, plaintiff was confronted with a situation which, if her contention was correct, she did not know, and

could not have known, existed at the time the suit was commenced; that is, when the three notes were produced, there appeared on the back thereof the words "Schienberg notes," which plaintiff contended were not on the notes when the petition was filed. These words being then on the notes, and from the face of the notes, it would appear that certain collateral securities were deposited therewith, which could be identified only by reference to the back or reverse side of the notes. There was but one of two ways for plaintiff to meet the situation, either by dismissing without prejudice and commencing a new action, or by way of amendment. She first sought and was granted leave to amend her petition, which was done by dictating the amendment into the record. This amendment not being verified, it was renewed by way of amended reply. It was merely a verified denial of the correctness of the notes as they then appeared. The conclusion of law, that this vitiated the notes, was not a fatal departure from the plaintiff's cause of action. This was a mere conclusion of law and not a statement of fact.

The amendment was made at the hearing before the referee. The motion of defendant for a new trial was not directed to the report, findings, and conclusions of law made by the referee, but was directed to the findings and conclusions of law made by the court upon a review of all the record. We think it essential that this question should have been presented to the court in the motion for new trial. For the reasons stated, the contention of defendant on this point cannot be sustained.

Under the third proposition, defendant presents some 14 of the assignments of error. These may all be properly considered on the question of whether the findings of the court are sustained by the evidence. The rule in this state is that a finding of fact, which has been determined on conflicting evidence by a referee, and subsequently by the court, upon a review of all the record, under an order requiring the referee to report the evidence with his finding of fact, will not be disturbed by this court where there is evidence reasonably tending to support the finding. Geter v. Ulrich, 34 Okla. 739, 127 Pac. 387.

There is a great deal of evidence in the record going to the origin of the indebtedness of J. F. Jackson to the bank, evidenced by the four notes set up by defendant in its answer. This evidence is not conflicting, and it appears therefrom that the three notes heretofore referred to as Nos. 1063,

1064, and 1065 grew out of certain indebtedness of J. F. Jackson to the Merchants & Planters Bank of Ada and certain notes upon which he was surety. The Merchants & Planters Bank closed sometime in February, 1922, and was re-opened in April or May, 1922. At the time this bank closed in February, 1922, J. F. Jackson was on four notes to that bank, one for $1,568.57, one for $2,091.42, one for $250, and one for $5,-400. These notes were subsequently renewed and part payments made thereon resulting in three separate notes to the Merchants & Planters Bank. The Merchants & Planters Bank consolidated with, or was taken over by, the First National Bank of Ada, on december 31, 1922. These notes went along with the assets of the Merchants & Planters Bank, and were later renewed into notes Nos. 1063, 1064, and 1065. The other indebtedness was the note of J. H. Herrin, J. M. Herrin, and J. F. Jackson to defendant dated December 15, 1922, for $1,493.84.

J. I. McCauley testified for defendant. He was formerly connected with the defendant bank, and was also connected with the Merchants & Planters Bank. He testified that he handled the Schienberg notes, and that they were first put up to secure the indebtedness of J. F. Jackson to the Merchants & Planters Bank shortly after it re-opened. That two of them were put up to secure a note which was afterwards renewed into the Bart Smith note; that shortly thereafter, the other three notes were put up to secure certain notes, one of which was a note of $4,500 of one Shelton, indorsed by J. F. Jackson and R. B. Smith. This he thinks was about August 1, 1922; that the Merchants & Planters Bank collected the interest on the Schienberg notes in April or May, 1922, and paid it to Mrs. Jackson; that the first interest thereon collected and kept by the bank was about May, 1923 (this was after the consolidation of the two banks under the name of First National Bank of Ada); that the interest due in November, 1922, was collected by the Merchants & Planters Bank, and on account of the illness of J. F. Jackson, and with the consent of R. B. (Bart) Smith, was paid over to Mr. and Mrs. Jackson. It is the evidence of this witness, together with the endorsement of the notes, the words "Schienberg notes," on the three notes mentioned, and the circumstances of the case, that defendant relies on as proving that the Schienberg notes were pledged to defendant for the payment of all of J. F. Jackson's notes and indebtedness.

On the other hand, plaintiff testifies quite positively that the Schienberg notes were

pledged for the Bart Smith note only. She testified, in substance, that the Schienberg notes, prior to the closing of the Merchants & Planters Bank, were kept in a safety deposit box in that bank, the key to which was kept by her; that when the interest thereon become due, November 1, 1922, she called upon Schienberg for the interest; that he was very busy and could not see her at that time; that thereupon, she requested Mr. McCauley to collect the interest for her, which he did, and placed the money to her credit in the Merchants & Planters Bank; that the notes were put in the private box of Mr. and Mrs. Jackson; that shortly after the Merchants & Planters Bank closed, three of the notes were taken and given to a Mr. Norris of the First National Bank; at the time these three notes were indorsed by J. F. Jackson in connection with a plan then pending for the opening of the Merchants & Planters Bank; that the plan then under way fell through, and the three notes were returned to her, and they were replaced in the safety box in the Merchants & Planters Bank, which was then closed; that she took a receipt from a Mr. Roupe showing that the three notes were returned to the safety box; that she herself put them in the box, locked the box, and took the key with her; that she did not see the notes thereafter until sometime in June or July, 1923, at which time her husband, J. F. Jackson, was sick; that he was worried about Bart Smith being on his note at the bank; they sent for Mr. Smith and the three of them made arrangements to pledge the Schienberg notes for the payment of the Bart Smith note; that thereupon they called Mr. McCauley and asked him to bring the Schienberg notes to their house, which he did, and there J. F. Jackson indorsed the other two notes and turned all five of them over to McCauley in pledge for the payment of the Bart Smith note and none other. In this she is corroborated by R. B. (Bart) Smith and Mrs. Jessie Price.

The evidence shows further that defendant by its officers went or sent others to plaintiff several times between June or July, 1923, and April 14, 1924, and requested her consent that the Schienberg notes be allowed to stand for all the indebtedness of J. F. Jackson, and that she declined to consent thereto.

Thus it appears that the evidence was in sharp conflict on this point, but there is plenty of evidence reasonably tending to sustain the finding of the court, that the Schienberg notes were pledged for the payment of the Bart Smith note only.

As to the question of whether the words "Schienberg notes" were on the three notes Nos. 1063, 1064, and 1065 when the suit was commenced, the evidence is scarcely conflicting. Two witnesses for plaintiff, Sam McClure of Houston, Tex., in the life insurance business, and W. F. Schulte, then attorney for plaintiff, both testify positively that they went together to the defendant bank about the last of June or the 1st of July, 1924, shortly before this suit was instituted, asked, and were granted, permission to inspect the three notes mentioned and made copies thereof, and that the questioned indorsement did not then appear thereon. McCauley, who testified for defendant, when asked when these words were placed upon the back of the three notes, said he did not know, that he had no idea, but presumed they were placed there by the stenographer who drew the notes; that it was the custom of the bank to write such indorsements in ink when the indorsements were made by the officers of the bank, but when done by a stenographer, it would be done with a typewriter. However, he testified that this indorsement was in contemplation of the parties at the time the notes were pledged, and the indorsements might have been placed there at any time under this agreement. Again, the evidence is at most conflicting, and the finding of the trial court that these words were printed on the notes after the institution of this suit is reasonably supported by evidence. For the purpose of this appeal, these findings will not be disturbed.

The fourth proposition is the claim of a banker's lien under section 7434, C. O. S. 1921, which reads:

"A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

In support of its claim of a banker's lien, defendant cites Gillette v. Liberty National Bank, 95 Okla. 76, 218 Pac. 1057, which holds:

"Where a customer of a bank has on deposit in the bank a sum of money subject to his check, the bank has the right to apply same to the discharge of any indebtedness due the bank by said depositor.

"Under section 7434, Comp. Stat. 1921, a banker has a general lien, dependent on possession, on all property in his hands belonging to a customer, for balance due the bank from such customer in the course of business."

The facts in that case are entirely dif-

ferent from the instant case, as these holdings are in reference to an ordinary deposit by a customer of a bank. However, it will be observed that the same case in paragraph 3 of the syllabus holds:

"The right of a bank to appropriate a deposit of a customer to the discharge of the indebtedness of the customer to the bank grows out of the relation of debtor and creditor existing between the bank and the depositor, and is in reality a right of set-off."

And in paragraph 5 holds:

"The relation of debtor and creditor between the bank and the depositor is contractual, and on one can create this relation between the bank and depositor without authority from the depositor, express or implied, and where deposit is made in the bank by a third person to the credit of another, without his knowledge or consent, and without authority, the relation of debtor and creditor does not exist."

Several other cases are cited, but they are all cases where, under the rules of law applicable, the relation of debtor and creditor existed.

Defendant also cites In re Gesas, 77 C. C. A. 291, wherein it was held:

"The lien given to a banker by Rev. St. Idaho, 1887, sec. 3448, declaring that a banker has a general lien dependent on possession of all property in his hands belonging to a customer for the balance due him from such customer in the ordinary course of business, is limited to property taken by a banker in the usual course of the banking business, such as banks are in the habit of dealing in, or in taking on deposit, or for collection, or otherwise, as notes, bonds, stocks, and other choses in action, and does not include stocks of merchandise, etc., which cannot conveniently pass into the actual possession of the bank."

It is specifically pointed out in the body of the opinion that the general rule is subject to modification, quoting with approval the following from Reynes v. Dumont, 130 U. S. 390:

"A general lien does arise in favor of a bank or banker out of contract, expressed or implied, from the usage of the business, in the absence of anything to show a contrary intention. It does not arise upon securities accidentally in the possession of the bank, or not in its possession in the course of its business as such, nor where the securities are in its hands under circumstances, or where there is a particular mode of dealing, inconsistent with such general lien. * * * 'A banker's lien* * * ordinarily attaches in favor of the bank upon the securities and moneys of the customer deposited in the usual course of business, for ad-

vances, which are supposed to be made upon their credit.' * * * 'Here, then, * * * is the true principle upon which this, as well as all other banker's liens, must be sustained, if at all. There must be a credit given upon the securities, either in possession or in expectancy.' "

None of the cases cited appear to deal with facts similar to the ones here under consideration. Referring to Reynes v. Dumont, 130 U. S. 355, the case quoted from, it will be found that therein was involved the question of the right to a banker's lien upon securities deposited with the bank for a specific purpose, and when this purpose was accomplished for safekeeping, it was held:

"The pledge of these bonds to guarantee the remittance by the bank as before stated and the circumstances under which they were left in the possession of S., and had been made use of by C., preclude the allowance of the banker's lien claimed on behalf of S., as against the ultimate indebtedness of C."

In Hanover Nat. Bank of the City of N. Y. v. Suddath, Rec., 215 U. S. 110, 54 L. Ed. 115, it was held:

"A bank which refuses to discount notes sent to it by a correspondent bank for discount and credit has no right, by virtue of its general banker's lien, to apply such notes as collateral to the payment of a loan voluntarily made to cover an overdraft of such correspondent bank."

And further:

"Notes sent to a bank by its correspondent for discount and credit, which such bank refuses to rediscount, cannot be held by it as collateral to the payment of a loan voluntarily made to cover an overdraft by virtue of an agreement embodied in a printed form prepared by such bank, and in general use by it, which gives the said bank power to appropriate any securities 'deposited with said bank, or which may hereafter be deposited with said bank, or which may be in any wise in said bank, or under its control, as collateral security for loans or advances already made or hereafter to be made to or for account of its said correspondent by said bank,' or otherwise.' "

In Phillips v. Thompson (N. Y.) 7 Am. Dec. 535, it was held:

"Security given for a specific purpose must be applied to that purpose alone, and to no other."

In Nashua Sav. Bank v. Abbott (Mass.) 63 N. E. 1058, it was held:

"An assignment of a membership in a stock exchange, given to secure a loan for a $4,500 note, recited that it was to 'remain in full force until all indebtedness of said

W. (the assignor) to said bank have been paid.' Afterward, this note being unpaid, and the assignment being still in the payee's possession, a new note for $5,000 was given in renewal thereof, and of another note for $500, and upon the new note was the memorandum, 'Collateral security. One membership (or seat) of the B. Stock Exchange.' Held, that the new note was secured by the membership.

"After making the assignment, the assignor executed a further note for $2,300, which was later taken up, and a new note for $2,000 given for the balance due. Neither of these notes mentioned the assignment, and there was no other writing which made it clear that the parties intended it to apply to them. Held, that the $2,000 note was not secured by the membership."

In Masonic Savings Bank v. Bang's Adm'r, 84 Ky. 135, 4 Am. St. Rep. 197, a case which appears to be directly in point, it was held:

"Banker has no lien on securities for general balance, or for the payment of other claims, where the securities were pledged to him to secure the payment of a particular loan or debt."

This case appears to be clearly against the position of defendant, both as to its claim of a banker's lien and the right to claim a set-off presented under proposition No. 1.

From the foregoing authorities, we conclude that under the facts in this case, as found by the court, defendant is not entitled to a banker's lien.

The remaining proposition, No. 1, presents the question whether defendant, if not entitled to a banker's lien, is barred by failure to file a claim against the estate for the unsecured indebtedness within the four months after notice to creditors was given. In fact, it also presents the question of the right of defendant to set off the unsecured indebtedness against the claim of plaintiff, notwithstanding no claim was filed with the executrix. It is conceded that no such claim was filed. Defendant specifically alleged in its answer that it was not looking to the general assets of the estate for the payment of said notes. If defendant had no lien upon the Schienberg notes or the proceeds thereof after the payment of the Bart Smith note, it would appear beyond cavil that so much of the notes, or the proceeds thereof, as were not required to pay off the Bart Smith note, was a part of the general assets of the estate. That is. if plaintiff had paid off the Bart Smith note, she would have been entitled to the return of the Schienberg notes, in the absence of a banker's lien thereon, which we have just seen defendant did not have. These notes

would then certainly have become a part of the general assets of the estate and subject to the payment of unsecured claims. By what process of reasoning can it be said that the proceeds of the notes in excess of the amount of the Bart Smith note, collected as they were before their maturity, and without the knowledge or consent of plaintiff, held by the bank without right, was not a part of the general assets of the estate? It is in evidence that the estate was insolvent. The record discloses that there was something more than $1,000 preferred claims against the estate for medical services and funeral expenses, besides a note for $1,000 in favor of John P. Crawford, claim for which was duly filed; that there were no funds available for the payment of same.

There can be no doubt but that defendant would be barred for failure to present its claim on the three notes which the court found were not covered by the pledge of the Schienberg notes, unless it is saved by the provision of sections 274, 275 and 279, C. O. S. 1921, which are cited and relied upon by defendant. The applicable part of section 274 is:

"Provided, that either party can plead and prove a set-off or counterclaim of the proper nature, in defense of the liability sought to be enforced by the other party, and it shall not be necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liabilty sought to be enforced against him. Such set-off or counterclaim shall not be barred by the statutes of limitations until the claim of the plaintiff is so barred.

Section 275 reads:

"A set-off can only be pleaded in an action founded on a contract, and must be a cause of action arising upon contract or ascertained by the decision of a court."

Section 279 reads:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other; but the two demands must be deemed compensated so far as they equal each other."

It is well-settled law that where a proper set-off exists in favor of one sued by an executor or administrator, it is not a prerequisite to the setting up of such set-off that the claim based upon the matter constituting the set-off should have been pre-

sented to the administrator or executor. Murphy v. Colton, 4 Okla. 181, 44 Pac. 208. The rule there announced has been long recognized in this state. Defendant cites this and many other cases to the same effect. We need not refer to other cases, as this rule is too well settled to call for further authorities.

The question then arises, Is the claim of defendant of the "proper nature" upon which to base a set-off or counterclaim in the action brought by plaintiff? It must be borne in mind that the action of plaintiff is . one for conversion. She bases her claim in the petition upon the wrongful conversion of the Schienberg notes, or the proceeds thereof. Had J. F. Jackson lived and brought an action for conversion, could the cross-demand of defendant have been set off against his demand? If so, defendant could not be deprived of the benefit thereof by the death of Jackson. This is the plain provision of section 279, supra.

We think this question has been definitely and conclusively settled against the contention of defendant in this state.

In First Nat. Bank of Lawton et al. v. Thompson, 41 Okla. 88, 137 Pac. 668, it was held:

"Under the statute, which limits the use of a set-off thus, 'A set-off can only be pleaded in an action founded on contract, and it must be a cause of action arising upon contract or ascertained by the decision of the court,' a defendant, when sued in tort for damages for the wrongful conversion of a span of mules, cannot use a note given by plaintiff to a stranger to the suit, assigned to defendant, as a set-off."

The rule there announced has been quoted with approval, or followed, in many cases. See Phillips v. Hargadine-McKittrick Dry Goods Co., 59 Okla. 294, 159 Pac. 320; Sanditen v. Allied Rfg. Co., 84 Okla. 47, 202 Pac. 316; Tracy v. Norvell, 92 Okla. 240, 219 Pac. 384; Abraham v. State ex rel. Mothersead, 117 Okla. 77, 244 Pac. 741. See, also, Masonic Sav. Bank v. Bang's Adm'r, 84 Ky. 135, 4 Am. St. Rep. 197, and cases cited at pages 202, 203, 4 Am. St. Rep. Neither can the notes be used as a counterclaim. Hazlett v. Wilkins, 42 Okla. 20, 140 Pac. 410; Harris v. Warren-Smith Hdw. Co., 44 Okla. 477, 144 Pac. 1050.

Defendant's notes not being such a c'aim or cross-demand as could be used as a set-off or counterclaim, it follows that the contention of defendant in this regard cannot be sustained.

The judgment should be affirmed.

BENNETT, TEEHEE, HERR, and HALL, Commissioners, concur.

By the court: It is so ordered.