# GEORGE H. ROZET

## *v.*

## WILLIAM H. McCLELLAN.

| 48 | 345 |
| 124 | 498 |
| 48 | 345 |
| 128 | 539 |
| 48b | 345 |
| 50a | 634 |

1. PLEDGE—*sale on default.* Where a party deposits the stock of an incorporated company, as collateral security to a promissory note, with power of sale by the pledgee, in case of default in payment, after a demand and notice, he may sell the stock and apply the proceeds to the discharge of the note. But the pledgee is not bound to sell, and, on failing to do so, he is not liable for the loss sustained by depreciation in the value of the stock which may occur after the default. The pledgor should have redeemed, by sale of the stock or otherwise, the general property still remaining in him with the right of redemption.

2. NOTE—*consideration.* Where a note was given, and the payee gave to the maker his check on a bank for the amount, and the drawee endorses it, and the holders deposit it to their credit in the bank, the maker of the note will not be

44—48TH ILL.

permitted to show that the holders of the check had received confederate money from the bank to prove a failure of consideration of the notes.

Writ of Error to the Superior Court of Chicago; the Hon. Joseph E. Gary, Judge, presiding.

The opinion states the case.

Messrs. Storrs & Johnson, for the plaintiff in error.

Messrs. Bailey & Magruder, for the defendant in error.

Mr. Justice Walker delivered the opinion of the Court:

In December, 1861, appellant and one Paul Queyrouse were engaged in conducting a corporation, styled the "Southern Shoe Manufacturing Company," in the city of New Orleans, of which appellant was president, and Queyrouse secretary. About the 5th of that month, appellee purchased of appellant, fifty shares of stock of the company, which appellant sold to him on the condition that appellee would lend appellant $5,000. Appellee drew his check on the Citizens' Bank of New Orleans, and received the shares of stock and appellant's note at four months, for the money thus loaned. The check was payable to the order of appellant, and by him endorsed, and also by his firm, and deposited to their credit in the American Bank at New Orleans.

When the note matured, appellant was unable to meet it, and it was renewed, by giving the note sued upon in this case, and transferring fifty shares of the stock to appellee as collateral security, and authorizing him to sell it at public or private sale, in case of the non-payment of the note, and to apply the proceeds in discharge of the note. On the maturity of the note, appellee failed to sell the stock, and it declined in value, and that is insisted upon as a defense in this action.

The agreement of the parties empowered appellee to sell, but did not, in terms, require him to sell. Had he exercised the power by giving notice to appellant to redeem, or he would sell, and he had failed to do so, and a sale had been made, there can be no doubt that the title would have passed to the purchaser, and the right of redemption by appellant would have been cut off and ended. Story, in his work on Bailment, p. 311, sec. 308, says that, under the common law, the right to sell the pledge results from the default of the pledgor in complying with his engagement. But such a right does not divest the general property of the pawnor, but still leaves him a right of redemption. And if the pawnor neglects or refuses to redeem the pawn, upon due demand and notice, the pawnee may have the pawn sold. It then follows that the title to the stock did not vest in appellee upon the default in payment by appellant. The general title remained the same as before the default, still subject to redemption. The right of sale, in case of a pledge, differs from other liens, as in other cases such right does not usually exist.

The question then presents itself, whether appellee was bound to sell this stock on the occurrence of the default, and on failing to do so, whether he has rendered himself liable to account for the loss? We have been referred to no authority announcing such a rule, nor have we been able to find any case that goes that length. In the cases of *Slevin* v. *Morrow*, 4 Ind. 425; *Roberts* v. *Thompson*, 14 Ohio St. R. 7, and *Jennison* v. *Parker*, 7 Mich. 355, cited in appellant's brief, hold the doctrine that the pledgee is bound to use reasonable diligence in the collection of negotiable paper, pledged as collateral security; but do not hold that it is the duty of the pledgee to sell property thus pawned. And as the rule is firmly established that the pledgee must make a demand, and give notice before he can sell the pledge, and bar the redemption, it would seem to follow that he was not bound to sell. And, under the ancient common law, it required a judicial

proceeding to authorize the sale, or at least to cut off the right of redemption. Story on Bailment, p. 312, sec. 310. The mortgagee, by delaying to sell the property upon which he holds a mortgage, does not incur liability for loss by its depreciation, and the pledgee not being required to sell, should not be subjected to the loss.

The pledgor having the general property in the pledge, may sell it and compel its restoration upon paying the money to redeem. Had appellant found a purchaser of the stock, who had tendered the amount of the note, and appellee had refused to deliver it to him as the purchaser, on the order of appellant, then a very different question would have been presented for our consideration. In this, appellant has presented no defense.

It is urged that the consideration of the note was for confederate money, or, rather, that the check was paid in such money, and that the court below erred in not permitting appellant to show that fact. It appears that the check was drawn for ten thousand dollars, not for so many confederate dollars, and it was deposited with a bank; and it can make no difference whether it was received in one kind of money or another, or whether it was passed to appellant's credit, as it was for lawful money, and it was a matter of choice if appellant received anything but money which was a legal-tender under the laws of the United States. If, on presentation, confederate money had been tendered, appellant should have refused it and compelled the payment of lawful money, or returned the check. This renders it unnecessary to determine whether confederate money would form a consideration to support a note. The judgment of the court below is affirmed.

*Judgment affirmed.*