OF THE

# COURT OF APPEALS OF KENTUCKY.

### JANUARY TERM, 1884.

CASE 82—PRACTICE—JANUARY 10, 1884.

| 81 | 527 |
|----|-----|
| 89 | 73 |
| 81 | 527 |
| 91 | 5 |
| 81 | 527 |
| 92 | 656 |

## Woolley v. Louisville Banking Company.
## Johnston v. Same.
## Theirman v. Same.

##### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Where the plaintiff fails to set forth a cause of action, it is no obstacle to his bringing another action alleging a state of facts which will authorize a recovery; but after a demurrer has been sustained to the petition, and the petition dismissed, he will not be permitted to bring another action setting forth the same facts when the judgment dismissing the first petition is pleaded in bar.

2. Mrs. Johnston's consent that certain of her stocks should be pledged for the payment of a certain debt of her husband did not give appellee a lien thereon for all the debts due by him. The lien is restricted to the particular debt for which it was pledged.

3. It is well settled that a creditor is bound to hold for the surety all securities he may receive from the principal to secure the debt for which the surety is bound.

4. Where the creditor represents to the surety that he holds collaterals, as an inducement to the surety to become bound, when in fact he holds none, the surety will be released from the debt. The creditor must suffer for the misrepresentation, and not the surety.

5. The release of one surety operates in this case to the release of all.

BEATTIE & WINCHESTER FOR APPELLANT, R. W. WOOLLEY.

A bill of exchange endorsed by the payee to the acceptor, *after* acceptance extinguishes the bill as regards the drawer. (Long v. Bank of Cynthiana, 1 Litt., 290; 4 Ark., 546; 2 Barn & Cress, 483; 7 Wait's Acs. and Defs., 36; Smith Cont., 92; 1 Wm. S. Sander, 211; Smith & Fah,

15 B. Mon., 445; Emmons v. Overton, 18 *Ib.*, 650; 50 N. Y., 158; 25·
L. I., sec. 4, chap. 244; Daniel Neg. Insts., sec. 480; 36 Eng. Law
and Eq., 562; 6 Ala., 852; 40 Pa. St., 186; Story on Bills, sec. 223;
Robinson v. Offutt, 7 Mon., 551; Ray v. King, 8 B. Mon., 510; Brant
on Suretyship, secs. 348, 373, 79.)

A creditor who induces a person to continue as surety for a debtor, by as-
suring the person that the creditor holds collaterals to secure the debt,
has no claim against the surety if the representation is untrue, although
innocently made, (Lead. Cas. Eq., part 1, 979–983; 4 Vesey, 824;.
17 Simons, 218; 8 Piek, 121, 131, 124; Morse on Banks, 42–43, 507,.
575; Tyler on Usury and Pawns, 595–576; 5 Wait's Acs. and Defs.,
175; Story on Bailments, 292,)

A married woman, resident of Kentucky, can not give a power of attorney
to pledge her separate estate as a collateral to secure the payment of
her husband's debt. (Civil Code, secs. 93, 109; Story on Eq. Pl., 456,
793; 3 Vesey, 255; Metford on Eq. Pl., 216; Jenks v. Irvin, MS.
opin., Lou. Chy. Ct. and Ct. Appeals.)

BIJUR & DAVIE FOR THEIRMAN.

It has been clearly shown by the brief of Messrs. Beattie & Winchester,
whose authorities we adopt, that R. W. Woolley was, by the misrep--
resentation of appellee, released from the debt. As Woolley was the
prior endorser, to whom Theirman had the right to look for indem-
nity, the discharge of Woolley is the discharge of Theirman's notes.
(Rees v. Barrington, two leading cases.)

The sureties had the right to expect the bank to use all proper care to pro-
tect the collaterals from loss.

Sureties are released by any act or default of the creditor which results in
loss of remedies or securities which would revert to the surety in pay-
ment of the debt. (Two leading cases Equity, 306, note to Aldrich v.
Cooper; 44 N. Y., 453.)

MUIR & HEYMAN FOR MRS. JOHNSTON.

Appellee is estopped from denying that the stocks are the property of ap-
pellant. The bank stock was issued by appellee to appellant as fully
paid-up stock, and appellee treated them as her property.

The attempted pledge of these stocks to appellee by Jas. C. Johnston, hus-
band of appellant, was void.

By reason of her coverture appellant had no power to consent to the pledge
or to make it.

Being a resident *femme covert*, she had no legal capacity to execute a power
of attorney, and as her endorsements were obtained for that purpose ·
only, they are void.

As these certificates were issued to the wife at the instance of the husband,
he became her trustee, the stocks became her separate estate, and the
trustee afterwards violated the trust. (Gen. Stats., sec. 36, chap. 24;
Campbell v. Galbraith, 12 Bush, 461; Marriman v. Marriman, 4 Met.,
90; Thomas v. Harkness, 13 Bush, 27; Gen. Stats., 532.)

Woolley, &c., v. Louisville Banking Company.

The judgment upon appellant's demurrer to the original and amended petitions was a bar to any claim of appellee as against her to the stocks in controversy. They were held to be insufficient, the petition dismissed, and no appeal has ever been prosecuted from that judgment. It settled all controversy in her favor. (Story on Eq. Pl., sec. 486; *Ib.*, 793; 3 Vesey, 255; Met. on Eq. Pl., 216.)

BARNETT, NOBLE & BARNETT, and W. LINDSAY and P. D. BUSH, for appellee.

Woolley's defense is that he, as drawer, has been released by the reissue of the bill to plaintiff. He does not deny, but admits he drew that bill. He does not plead want of notice of protest, or of due presentation for payment. In substance, he says the endorsement by Johnston and McDonald to Johnston satisfied the bill, and extinguishes it as to him.

This is not a bill passing from hand to hand for value, nor does it ever reach the hand of a prior endorser. It was an accommodation bill. (Smith v. Lockridge, 8 Bush, 427; 20 How., 343; Bradford v. Ross, 3 Bibb, 239; Woolfolk v. Bank of America, 10 Bush, 574; Welby v. Smith, 1 Met., 316; Spencer v. Biggs, 2 Met., 125; Alexander v. Springfield Bank, *Ib.*, 335; May v. Quinby, 3 Bush, 102; Taylor v. Hay, 2 J. J. Mar., 461; 1 Stewart, 154; 3 Wheat, 172; 13 Conn., 412.)

As to Woolley's defense that he was induced to sign one of the bills by the fraudulent representations of Theodore Harris, that he held the stock of J. C. Johnston sufficient to protect it, we say that Harris never made such representations. If such representations were made and were false, they constitute no fraud. (Campbell v. Williams, 14 B. Mon., 517; Ball v. Lively, 3 Dana, 370.)

If any such agreement was made, no breach has been averred by Woolley. (2 Cranch, 578; 31 Devan, 284; 46 Penn. St., 94.)

As to Mrs. Johnston's defense, she never had any right, title or interest in and to the stock.

Her husband had disposed of his interest in the stock before he gave it to his wife.

If she had any interest, she, by her endorsement of the certificate, consented to and aided her husband in transferring that interest to appellee. In no case can she be adjudged the owner of the stock, except subject to the pledge to appellee. (Payne v. Powell, 2 Bush, 252; Hudson v. Buckner, 4 Dana, 251; 48 N. M., 585; Schuler's Domestic Rel., chap. 5, p. 3; 2 Adol & Ellis, 30; 10 Cushing, 291.)

Mrs. Johnston's plea in bar of appellee's right to recover can not be maintained.

It is not a bar, because it is not a judgment on the merits.

If it had been a judgment on the merits, she, by her cross petition against appellee, waived the right to plead said judgment in bar.

The supposed bar was not well pleaded by appellant to any portion of the counter claim of appellee. (Burch v. Funk, 2 Met., 544; Kendrick v. Talbot, 1 Mar., 321; Thomas v. Hele, 5 B. Mon., 594; Timberlake v. City of Newport, MS. opin., 1880; 91 U. S. Ct. Ct. Rep., 526; Burdet v. Burdet, 2 A. K. Mar., 144; Warner v. Bledsoe, 4 Dana, 73; Herman on Estoppel, secs. 86, 95; Introduction to Bigelow on Estoppel, 48.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The Louisville Banking Company (appellee) instituted an action in equity against R. W. Woolley, Jas. C. Johnston, and Johnston and McDonald, on a bill of exchange for $1,200, due and payable in ninety days from the 15th of September, 1877. The bill was drawn by Woolley and accepted by Jas. C. Johnston, and then endorsed by Johnston and McDonald to Jas. C. Johnston. The object of the bill was to enable Jas. C. Johnston to raise money, or rather to renew certain paper to the banking company upon which Woolley was then liable as surety or endorser of Johnston. A personal judgment was sought against Woolley, and the aid of the chancellor invoked for the purpose of subjecting to the payment of the debt certain certificates of stock that had been pledged by Jas. C. Johnston as collateral security for the payment of a note or bill for which he alone was liable, the plaintiff (the bank) alleging that by the terms of its charter it had a lien upon these collateral securities for the payment of any debt the pledger might be owing the bank, and that after satisfying the debt for which it was specially pledged, the balance should be applied to the other indebtedness of Johnston to the bank. The bank held another note on Johnston, with Woolley and Theirman as endorsers, and sought to obtain judgment against these endorsers by an action at law. That action was transferred without objection, on the motion of the defendants, and consolidated with the equity action.

Jas. C. Johnston, who was primarily liable as between the parties to the paper, was the trustee of his wife, Julia Johnston, and the certificates of stock were issued in his name, and were pledged by the husband to secure the payment of the twelve hundred dollar note for which he was liable, and upon which there was no surety or endorser.   The name of Mrs. Johnston was written on the back of each certificate, and the certificates attached to this note, and pledged by the husband to secure that note only.   Mrs. Johnston, the wife, was made a defendant to the action in equity, and the chancellor was asked to sell this collateral paper first to satisfy the twelve hundred dollar note, upon which there was no surety, and then to apply the balance to the other indebtedness of her husband to the bank, upon which Woolley, &c., were liable.   After describing the stock, it is alleged by the bank "that all of the shares of stock stood in the name *of the defendant,* Julia Johnston, but were really the property of the defendant, J. C. Johnston, and paid for by him out of his own means, and she by reason thereof, by endorsement on said certificate, duly signed by her, authorized her husband to pledge the same," &c.   Spratt, the trustee of Mrs. Johnston, her husband having become bankrupt, and Mrs. Johnson, filed a general demurrer to the petition, insisting that the facts did not constitute a cause of action against them or either of them.   The demurrer was sustained, and two weeks time given the plaintiff to amend its petition.   The appellee (plaintiff) amended the petition, alleging "that the stocks were the property of Johnston, the husband, and at the time the pledge was made to the plaintiff, defendant, Julia Johnston, had no knowledge or information that such stock had been purchased, nor that the same stood in her name, nor that certificates therefor

had been issued therefor, nor had said stock or any of it,. or said certificates or any of them, been delivered to or accepted by Julia Johnston, nor had she ever had the possession or seen any of the certificates; but subsequently to said pledge her name was signed on the back of them, as and for the purpose in the original petition set out, and plaintiff says that said stock, and no part thereof, belongs to said Julia Johnston, nor as to plaintiff has she now, nor did she ever have, any interest therein." To this petition as amended a demurrer was sustained, and time having been given to amend, an order was entered reciting that no amendment having been made, it is now considered by the court that the petition and amended petition be dismissed, and that plaintiff pay to Julia Johnston her costs expended, and for which execution may issue, &c.

On the same day the order dismissing the petition as to Mrs. Johnston was entered, the defendant, R. W. Woolley, who was the endorser and drawer for the husband of Mrs. Johnston, filed an answer and cross petition, in which he alleges that the bank, by reason of its charter, had a lien on this stock, and that it was the general estate of the wife, and asks that it be subjected to the payment of the debt for which he is liable. It is further alleged in this answer and cross petition of Woolley that it was the understanding and agreement between himself and the bank that this stock would be held by the bank for his protection, and that it would apply the surplus to the payment of his (Woolley's) liability. This the bank denies, and Mrs. Johnston, answering the cross petition of Woolley, sets forth the trust on the part of the husband, claiming that the stock was her separate estate and purchased with her money, and denying that the stocks were even pledged for the debt upon which.

Woolley was liable, and asked that the bank be compelled to surrender the stocks, and for that purpose made her answer a cross petition against the bank, her trustee uniting with her in the prayer for relief. To this cross petition of Mrs. Johnston the (appellee) bank filed an answer and counter claim against Mrs. Johnston and her trustee, in which it relies on the same matters set up in the original and amended petition, to which a demurrer had been sustained and the petition dismissed. To this pleading by the bank the appellant, Mrs. Johnston, and her trustee, pleaded in bar the judgment on the demurrer. A judgment was rendered by the chancellor subjecting the stocks to the payment, first, of the note of twelve hundred dollars for which Jas. C. Johnston was alone liable, and then to pay the debts for which Woolley and Theirman were liable, and also rendered a formal judgment against Woolley and Theirman for the bills upon which appeared their names. Mrs. Johnston and Woolley and Theirman appeal.

If the facts alleged in the petition as amended by the plaintiff, and to which demurrer was sustained, were true, it may well be argued that the plaintiff was entitled to recover; but waiving the decision of that question, the court below decided that the facts alleged did not present a cause of action against Mrs. Johnston, and dismissed the petition as amended absolutely, with a judgment of costs against the bank. The court, in effect, decided that upon the facts stated the stocks of Mrs. Johnston, with the certificates issued in her name, could not be subjected to the payment of her husband's debts. The principal object in going into a court of equity was to divest the wife (Mrs. Johnston) of title. The certificates of paid up stock were in her name, and pledged to secure an indebtedness for which she was in

no manner liable; and after a judgment that is final, the appellee, by a counter claim, attempts to set up the identical facts that had been adjudged insufficient in the petition,. and upon these facts obtained the judgment. There may be a more minute statement of the transaction in the counter claim than the petition, but the substance of each is *that the stock belonged to the husband and not the wife, and was paid for by the husband out of his own means.* There was no fraud or mistake alleged in the issuing of the stock, either in the petition as amended or in the counter claim. Mrs. Johnston's right to the stock, by reason of the judgment on the demurrer, is unquestioned, and when she required the bank to surrender the stock, the defense being similar in substance to the claim asserted in the petition, should have been disregarded and a judgment rendered for her.

"A decree or order dismissing a former bill for the same matter may be pleaded in bar to a new bill if the discussion was on the hearing, and was not in terms without prejudice." (Story's Equity Pleadings, sec. 793.) "Demurrers (says Story), though sometimes for dilatory causes, in the nature of a plea in abatement, are in legal effect in bar of the suit praying for a dismissal of it." When the case is dismissed on the merits already, it is a bar to another action. "No subsequent action can be maintained by the plaintiff, if the judgment be against him, on the same facts stated in the former complaint. If any court err in sustaining a demurrer, and entering judgment for the defendant when the complaint is sufficient, the judgment is nevertheless on the merits. A judgment in favor of defendant on demurrer to an answer is a bar to a subsequent suit for the same cause of action." (Freeman on Judgments, sec. 267, p. 268.) "The dismissal of a bill in chancery stands nearly on the same footing as a.

judgment at law, and will be presumed to be a final and conclusive adjudication on the merits, whether they were or were not heard and determined, unless the contrary is apparent on the face of the pleadings, or in the decree of the court." (Freeman on Judgments, p. 270.)

In the case of Lamme v. Sanders (1 Mon., p. 267) this court said: "It is true the demurrer of Lamme, which was filed to the plea at law setting out the usury, was sustained by the court of law, but if we are correct, the court erred in sustaining that demurrer, and to be relieved from that error the defendants should have appealed, and not resorted to a court of equity."

Where the plaintiff fails to allege any cause of action, it is no obstacle to his bringing another action by alleging a state of facts entitling him to recover, but he will not be permitted, after setting forth a state of facts in his petition, whether sufficient or insufficient to authorize a recovery, after a general demurrer has been sustained to his pleading and his action dismissed, to bring another action setting forth substantially the same facts, and recover where the former judgment is pleaded in bar of the recovery. So in this case the court decided, by sustaining the demurrer, that there was no equity in plaintiff's action as against Mrs. Johnston, and when the plaintiff relied on the same facts in his counter claim, the plea alleging a final judgment between the same parties, with reference to the same subject matter, should have defeated any recovery on the counter claim.

Woolley had no cause of action against Mrs. Johnston or her trustee. It is not pretended that the stocks were pledged to secure either of the debts upon which he was bound, but, on the contrary, it is expressly admitted in the pleadings of all the parties that the stocks were pledged alone to secure

the individual note of her husband, upon which Woolley was not bound. The lien of the bank, by reason of its charter, did not extend or apply to the property of another than the debtor who had consented that his property should be pledged to secure a particular liability. If Mrs. Johnston had consented that the stocks should be pledged for one of the notes or bills, this did not give the bank a lien upon it for all the bills due and owing it by the husband. There was no fraud in the transaction, for the bank, with full knowledge of the liability of Johnston, issued the certificate of the bank stock to his wife, and besides, no fraud has been alleged or proven by any of the creditors or the sureties. It is shown that Johnston, the husband, had wasted the trust estate, and with the certificates of stock issued to the wife the chancellor would have regarded the rights of a creditor, to whom the stock had in no measure been pledged, as subordinate to the rights of the wife. So neither Woolley or Theirman have any claim as against Mrs. Johnston, nor any equitable right to subject this stock to the payment of their liability; and, besides, as there was no pledge of the stock for the debts upon which Woolley and Theirman were liable, their lien, if any, must be derived through the bank, and it is manifest that the bank had no lien, regardless of the judgment that denied its right to recovery.

Woolley complains of the final judgment against him for the reason, as is alleged in his original and amended answers, that he was induced to continue his liability on the paper of Johnston by reason of the statements of the president of the bank to him that he held the collaterals of Johnston, and that they should be applied to protecting him as the endorser or drawer after the extinguishment of the $1,200 note. Not only a representation, but an express agreement

to that effect is alleged by Woolley in his amended answer, and that this constituted the inducement for the renewals of the paper; that he was ignorant of the fact that the collaterals were in the name of Mrs. Johnston, and relied upon the statements of the president of the bank that Johnston was the owner. It is shown by the president of the bank that the money, or the most of it, that was applied to the payment of the stocks purchased, was derived from bills discounted by Johnston, and for that reason he regarded Johnston as the real owner. These facts were not communicated to Woolley, but, on the contrary, he was told by the president that the collaterals belonged to Johnston. Woolley so swears, and his statements are not denied by the president or any officer of the bank. The president, when examined in reference to Woolley's statement, says: "If I spoke of the stock at all, I would naturally have spoken of it as Johnston's, and not as his wife's, for I did not consider it as hers, and I would very naturally have said that Johnston would not be permitted to transfer the stock while he was in any manner liable to the bank, but this could only have applied to the bank stock."

Woolley is not contradicted at all by any of the officers of the bank with reference to this branch of the controversy, and the only conflict in the testimony is as to the *promise* of Woolley to pay after the bankruptcy of Johnston took place, which does not affect the question involved. It matters not how innocent the bank officers may have been of a purpose to wrong the endorsers, if the president of the bank induced Woolley to continue his liability by assuring him that the bank held collaterals of Johnston to secure the debt, and it turns out that the bank had none, the surety is released, and the release of one operates to release all.

The proof shows not only that the stocks were issued to Mrs. Johnston, and so appeared when they were pledged, but the chancellor has decided, by a judgment final as between the bank and Mrs. Johnston, that the stocks can not be subjected to the payment of these claims. The officers of the bank admit that they knew that the certificates appeared in the name of the wife of Johnston, and in fact the certificate for the bank stock was issued as paid-up stock by the bank now litigating Mrs. Johnston's right to it. The certificates show that the stock was fully paid for, and that Mrs. Johnston was the owner, so there can be no escape from the conclusion that it was the duty of those representing the bank, when speaking of the collaterals at all, to induce a continuance of the liability of the surety, to have disclosed the fact that the stock pledged, as appeared from the certificate, was in the name of the wife of Johnston. It is a settled rule of law that a creditor is bound to hold for the surety any securities he may secure from the principal to secure the debt for which the surety is bound, and certainly when the creditor represents that he has collaterals when he has none, as an inducement to one to become or continue his liability as surety, the creditor must suffer and not the surety. The president knew that the collaterals stood in the name of the wife, and while the transactions between him and Johnston may, and doubtless did, lead him to believe that it was Johnston's stock, still the injury to the surety is the same. The facts should have been disclosed when offering the inducement, and particularly when they were within the knowledge of the officers of the bank and Woolley ignorant of their existence. These parties all trusted Johnston under the belief that he was able to meet his engagements, and, when he became embarrassed, the

Woolley, &c., v. Louisville Banking Company,

property of the wife (and she seems to have been the real sufferer) is sought to be made liable for the payment of his debts. ` Woolley was the prior endorser on the paper, and his release discharges Theirman; and if they had been co-sureties, it would make no difference.

On the law and facts of the record a judgment should have been rendered for Mrs. Johnston for the stock and dividends unappropriated at the date of the judgment on the demurrer, and dismissed as to Woolley and Theirman.

Judgment reversed, and cause remanded for proceedings. consistent with this opinion.

---

To a petition for a rehearing—
JUDGE PRYOR DELIVERED THE FOLLOWING RESPONSE:

The question raised by the petition for rehearing was fully· considered on the oral arguments, and by a careful reading of the briefs; and even if we are mistaken as to the law of the case in reference to the pleadings, the facts develop the property in the stock as belonging to Mrs. Johnston, with a full knowledge of that fact with the officers of the bank, and we perceive no reason for disturbing the opinion either on the pleadings or facts.

Petition overruled.