## National Bank of Kentucky et al. v. Gallagher.

(Decided May 10, 1932.)

SELLIGMAN, SELLIGMAN & GOLDSMITH and NORTON L. GOLDSMITH for appellants.

S. A. ANDERSON and CHESTER WHISTLER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The basic questions involved in the appeal pertain to the authority of a bank under the circumstances to hold collateral pledged to secure debts, and its duty to sell the pledged property when directed by the pledgor

after maturity of the obligations. It also presents several subsidiary questions which we do not find it necessary to consider.

On April 11, 1927, J. G. Gallagher executed his note for $1,900 to the National Bank of Kentucky. On June 2, 1927, J. G. Gallagher and Charles L. Gallagher executed their joint note to it for $1,500. On June 7, 1927, the two brothers made another joint note for $2,400 and then pledged with the bank as collateral security therefor one hundred shares of stock in the Louisville Railway Company, having a value of $3,900, which was owned by them in equal parts. It was stipulated in the contract of pledge contained in the note:

> "This pledge is made to secure all sums of money for which the undersigned may now or hereafter he liable to the said Bank . . . either directly or contingently, and as principal, surety, guarantor, assignor, endorser or otherwise . . ."

Upon default in payment of any of such liabilities the bank was authorized to sell the whole or any part of the collateral at public or private sale at its option, and after deducting the expense of sale to "then apply the residue to any one or more or all of the said liabilities whether due or not as either of its officers shall deem proper and in such proportions as either of its officers shall deem proper." A few days after the execution of the $2,400 collateral note J. G. Gallagher died intestate. He was insolvent.

In October, 1927, shortly after maturity of the collateral note, and when both of the other notes were past due, Charles L. Gallagher called upon Henry G. Angermeier, a vice president of the bank, and offered to give $3,900 for the stock. He proposed that the $2,400 note should be thus satisfied and that the bank hold $1,500 pending the outcome of his claim that his signature on the $1,500 note was unauthorized and a forgery. The bank declined the proposition, as it claimed a right to hold the collateral as security for the individual note of J. G. Gallagher for $1,900 and the right to apply the proceeds of the security to its payment first since it was the oldest of the three obligations. This right was denied by Mr. Gallagher. He testifies that when his proposition was declined, he then directed a sale of the stock, but Mr. Angermeier stated it was good stock and that the bank

was going to hold it. In response Gallagher told him that if it did so it would be at the bank's risk. A few days after that, and again seven or eight months later, in the summer of 1928, similar unsuccessful effort was made to get together, and again the bank was directed to sell the stock. During this period, from the maturity of the note in October, 1927, until September, 1929, the market price of the stock ranged from $36 to $43 a share. In December, 1929, the bank sold the stock for $12 a share and applied the net proceeds as a credit on the $2,400 note. The $1,500 note had been previously paid.

When the bank sued Charles L. Gallagher on the $2,400 note, he made a counterclaim for damages sustained by reason of the failure of the bank to sell the stock when notified to do so and in having held it until its value had depreciated from $3,900 to $1,200. It was charged that there was a conversion when the security was not sold as requested by the pledgor or when payment of $3,900 in satisfaction of the two joint notes was declined. At the conclusion of the introduction of the evidence as above outlined, the court directed the jury to return a verdict for $750 on the counterclaim. The judgment canceled the $2,400 note and awarded $750 with interest from October 7, 1927, over against the bank. We are not able to follow the calculation, but the matter becomes immaterial. The bank, by its receiver, who was named while the suit was pending, brings the appeal.

The validity of an express stipulation in a collateral note that the pledge may be held to secure any indebtedness contracted by the pledgor other than that for which it was specifically deposited is not an open question, and the bank had the right under the terms of the contract to regard it as security for all of the obligations of the pledgors according to those terms. Wilson & Muir v. Carothers & Brother, 43 S. W. 684, 19 Ky. Law Rep. 1565; American National Bank v. J. S. Minor & Son, 142 Ky. 792, 135 S. W. 278; 21 R. C. L. 654. The undoubted right of the bank to hold the collateral to secure the two joint notes was recognized by Gallagher in offering to redeem it by paying the two notes. It may well be doubted, however, that the bank had the right to hold Charles L. Gallagher's part of the stock as security for the individual debt of J. G. Gallagher. If there be any doubt as to the construction of the contract, in consonance with the general rule, it must be resolved in favor

of the pledgor, as the instrument was prepared by the pledgee and was its form of collateral note. 49 C. J. 936. The terms of the agreement related to joint obligations, and we do not construe them as constituting a pledge of property of one of the parties for the individual debt of the other, although they are undoubtedly sufficient to include each one's stock for his own debt. Cf. American National Bank v. J. S. Minor & Son, supra. It is a well-established rule that a bank or other pledgee has no lien on securities deposited with it for the payment of other claims where they were pledged to secure the payment of a particular specified loan or debt and there is no agreement, express or implied, to a different effect. Nor can the collateral be appropriated to a different debt or class of debts. 21 R. C. L. 653; Woolley v. Louisville Banking Company, 81 Ky. 527; Masonic Savings Bank v. Bangs' Adm'r, 84 Ky. 135, 4 Am. St. Rep. 197; Haldeman v. German Security Bank, 44 S. W. 383, 19 Ky. Law Rep. 1691; First National Bank v. Germania Safety Vault & Trust Company, 112 Ky. 734, 66 S. W. 716; Annotations, 43 A. L. R. 1071; First National Bank v. Jackson, 140 Okl. 282, 283 P. 242, 68 A. L. R. 900. Under this rule, in First National Bank v. Finck, 100 Wis. 446, 76 N. W. 608 (supporting the text of 49 C. J. 984), it was held that proceeds of sale of collateral for joint debts should be credited on them rather than on an older individual debt of one of the parties. See also, Jones on Collateral Securities, secs. 550, 551.

We have regarded the offers of Gallagher to the bank as being a sufficient tender of payment of the two joint notes, although the evidence strictly construed would indicate a mere offer to buy the collateral for the face of the two notes, which was slightly more than the market value of the stock at the time. In order to redeem collateral the pledgor must pay or otherwise discharge in full the debts it secures, unless there is a provision requiring a pro tanto release on partial payment being made. Herman Goepper & Company v. Phoenix Brewing Company, 115 Ky. 708, 74 S. W. 726, 25 Ky. Law Rep. 84; 21 R. C. L. 680; 49 C. J. 969; Jones on Collateral Securities, sec. 540.

Gallagher's offer was to satisfy the joint debts only, but his demand was for redelivery of all of the collateral. He had no right to repossess the half interest in the stock of his deceased brother, which, as stated, the bank was

justified in holding, to secure his separate debt. It may be said that upon a statement of counsel for his brother's administrator that he would turn over his brother's part of the stock to him upon payment of the joint obligations, Mr. Gallagher was claiming the right to withdraw all of the security as owner of it. The attorney for the administrator testified that he had purposed to ask the authority of the chancellor to do that, but he clearly understood he was without power to do what Mr. Gallagher understood had been done. Certainly, Gallagher's claim in this matter was without foundation in law and could not affect the rights of the bank in respect to the brother's stock. It follows that the bank cannot be held liable for conversion of appellee's stock in having refused to surrender it when he made no unconditional demand for it, or rather made no offer to satisfy the entire debt which the entire stock was pledged to secure.

It remains to be determined what effect should be given the several directions of the pledgor to the bank to sell the stock after maturity of the obligations which it secured, and his statement that the bank would hold the stock at its own risk. The question of negligence is not involved in the case as the action is founded upon conversion. The contract of pledge contains no provision which can be construed as requiring the bank to sell the stock upon request of the pledgor. It authorized the bank to sell the collateral but did not obligate it to do so. The power to sell was a right and not a duty. A pledgee may waive his right to sell the property upon default, but in the absence of a special agreement that he shall sell it within a specified time there is no legal obligation to do so. Nor can the pledgor cast that duty and responsibility upon him by requesting or directing him to make a sale. Consequently, he cannot be held liable for depreciation in value of the property after he declines to sell it, in the absence of bad faith or negligence. 49 C. J. 997; 21 R. C. L. 689; Jones on Collateral Securities, secs. 606, 728, 729; First National Bank v. Hattaway, 172 Ga. 731, 158 S. E. 565, 77 A. L. R. 375. The full annotations of the latter case show that the subject has been treated by many courts and this rule laid down and applied with only a few exceptions, which do not appear to have continued as authoritative in the respective jurisdictions in which the opinions were rendered. After default, to protect himself when he thinks it best to dispose of the collateral to avoid depreciation, the pledgor

must redeem and sell it, or produce a purchaser who tenders the amount of the debt. Rozet v. McClellan, 48 Ill. 345, 95 Am. Dec. 551. It is not a mere multiplication of words to say the bank had the right to exercise its rights.

The court is of the opinion that verdict should have been directed in favor of the plaintiff on its note and against the defendant on his counterclaim.

The judgment is reversed and remanded for consistent proceedings.