# Smith v. American & Scottish Investment Co. et al.

(Decided May 11, 1934.)

R. MILLER HOLLAND and W. P. SANDIDGE, Jr., for appellant.
C. W. WELLS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Raphael F. Smith has appealed from a judgment of $1,464.34 recovered against him. On September 24, 1929, Smith purchased of George M. Forman & Co. 25 shares of the preferred stock of the Southwestern Dairy Products Company at 92⅞. This purchase amounted to $2,321.88, of which Smith paid $580.47 in cash, and was to pay the remainder in four equal monthly installments. This sale was evidenced by a writing containing the following:

"In the event of failure to make installment payments within thirty days from the date such payments are due, the Company reserves the right to sell the security at the then market price, remitting to the purchaser the balance, if any, in excess of the amount due it on the purchase price of the security, it being understood, however, that the Company will give ten days written notice of its intention to cancel this contract on account of default in installment payments. Title to said security shall remain in George M. Forman & Company, which retains the right to pledge or hypothecate the security purchased until the same is fully paid for."

This contract, on the day it was made, was assigned and transferred to the appellee, American & Scottish Investment Company. Smith failed to meet his monthly installments or to do anything about them except to write this letter:

"June 6, 1930. Geo. M. Forman & Co., Chicago, Ill. Please advise me the present value of Southwest Dairy preferred. I owe you a balance of $1,741.41 and it looks like I will be compelled to

sell either Southwest Dairy or American Scottish Inv. Company stock. Please admise me the market value of each. Yours truly, R. F. Smith.''

Things ran along until December 31, 1930, when the 'American & Scottish Investment Company notified Smith by registered letter, which he received, of its intention on January 12, 1931, to sell this stock at public sale, unless Smith should at once pay what he owed thereon.

Smith did nothing, and the stock was sold and brought $250. For this $250 and for certain dividends it had received on this stock, the American & Scottish Investment Company gave Smith credit upon his contract, and then sued him for the balance due thereon. Smith's demurrer to the petition was overruled, and he filed an answer and counterclaim, of which the part that concerns us is his claim that, due to financial difficulties, he failed to pay the installment due October 24, 1929, or within thirty days thereafter, and he contended that then, on November 24, 1929 (the end of the thirty days provided in his purchase), it became the duty of the American & Scottish Investment Company to resell this stock. He admits there was then no market for the stock, but alleges that on December 4, 1929, there was, and that this stock was then quoted on the market at $93\frac{1}{2}$, and could have been sold for that figure on that day, and, if so sold, would have yielded Smith a profit of $15.62, which sum he adds to the $580.47 he had paid, and he asks judgment on his counterclaim for $596.09 and that the petition be dismissed.

To this a demurrer was sustained, Smith declined to plead further, judgment went against him, and he appeals. Most able and voluminous briefs have been filed, but we see no need for any elaboration.

The American & Scottish Investment Company had been given by Smith the right to sell this stock, but we fail to find anything obliging it to do so. See 21 R. C. L. p. 689, sec. 49. Smith also had the right to sell this stock for any price that would produce enough to pay the debt due the American & Scottish Investment Company or for a lesser sum with its consent, but we find nothing that obliged him to do so. It was the duty of Smith, if he desired to avoid a loss, to redeem this stock and sell it himself. 21 R. C. L. p. 689, sec. 49; 49 C. J. p. 997, sec. 247. Neither could foresee what the market

was going to do, and for a time neither did anything. Ultimately the American & Scottish Investment Company became tired of this waiting policy, and sold, and Smith now feels it should have sold at an earlier date when the stock would have brought a better price, to wit 93½, but, if it had sold then and at that price, and the stock had thereafter advanced to $1.25 or $1.30, would not Smith then feel aggrieved because his stock had been sold without waiting for the advance?

The case of National Bank of Ky. v. Gallagher, 243 Ky. 740, 49 S. W. (2d) 1006, cannot be distinguished from this one.

Judgment affirmed.