## Kavinedus et al. v. Maglia et al.

(Decided May 15, 1936.)

C. B. SPICER for appellants.

WM. SAMPSON and E. L. MORGAN for appellee Harlan Nat. Bank.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This proceeding was instituted in the Harlan circuit court by the appellant Charles Kavinedus, as a common-law action against the Citizens National Bank of Harlan, Ky., seeking to recover possession of a certain $9,000 lien note (of which he alleged he was the owner), which had been pledged as collateral to the defendant bank for certain designated indebtedness owing it, the payment of which he alleged had been made or tendered the bank, but that notwithstanding its satisfaction, he claimed the bank was nonetheless wrongfully detaining his pledged collateral, and refusing to surrender same, upon the claimed ground that the collateral note had been also pledged as collateral for certain further indebtedness owing the appellee, as represented by a note held by it for collection. Plaintiff pleaded that if it were so pledged therefor, same was wrongfully done without his, the owner's, warrant or authority given pledgor to so use it, and constituted no avoidance of right to recover its possession, free of any lien impressed by such improper pledge.

The facts as disclosed by the record, so far as here material, appear to be that the appellants, Charles Kavinedus and Pete Margaretus, had for some years prior to the filing of this suit by Kavinedus, operated as a partnership and jointly owned a hotel and restaurant business in Harlan, Ky.; that in 1927 they had sold their hotel property, known as the New Harlan Hotel, to one T. G. Wright for a consideration of some $50,000, for which six lien notes had been executed the partners, Kavinedus and Margaretus, as joint payees, the first for the sum of $5,000, payable six months after date of sale, and five notes for $9,000 each, payable in one to five years respectively after date of sale.

Following this sale of the hotel property, it appears that the appellant, Charles Kavinedus, in 1928 made an extended visit to his native home in Greece, where, during his sojourn, he spent some $30,000 of the sale proceeds of this partnership hotel and also, having, while yet abroad, been here sued by one Anna Franga for breach of promise, he used a further $6,000 of these partnership funds for making compromise settlement of the suit.

Further it appears that the needed funds for his meeting of these large expenditures, made during this

home visit, were supplied upon his frequent requests made therefor upon his partner, Margaretus, by the latter's having arranged that these importuned remittances should be forwarded him through the defendant Citizens National Bank. Later, Kavinedus, after having heavily drawn upon their partnership capital, on December 13, 1929, executed a bill of sale, or an assignment, to Margaretus of his one-half interest in the last four of these five $9,000 hotel lien notes, which was duly signed and acknowledged by him before the United States vice consul at Soloniki, Greece, and accordingly, when so certified, was returned to Margaretus.

This instrument, entitled a bill of sale, and so executed by Kavinedus to Margaretus, recited that Kavinedus, "in consideration of the sum of $1.00 cash in hand and other good and valuable consideration, the receipt of which is hereby acknowledged, has this day sold and by these presents does grant and convey unto the party of the second part, four notes for $9,000.00 each dated August 1, 1927 * * * and signed by T. G. Wright and secured by purchase money (lien) on the New Harlan Hotel in Harlan, Kentucky," and was, upon its receipt by Margaretus in Harlan county, duly there put to record.

Both Kavinedus and Margaretus in their later depositions state that such pretended sale or assignment of these notes was made only for the fraudulent purpose of enabling Kavinedus, by such ruse, to cover up, under color of transferring to Margaretus, his interest in these notes and defeat the woman, Anna Franga, in the collection of damages in her breach of promise suit against him by thus avoiding her attaching his interest in these notes, which he alleged were then solely owned by him, and that the simulated transfer was not intended, as between him and Margaretus, his assignee, as a real transfer of any title thereto, but was in fact a fraudulent assignment of his interest therein, made only for the purpose stated.

We will next look to the conduct and dealings of the other of these partners, Margaretus, as to his part played in the devious teamwork of these wily Greek "buddies" with respect to their tricky juggling of the ownership of these notes.

It is disclosed by the record that in 1927, Margaretus, he too, as his partner, being Greek born, had also made a home visit to Greece during which time he had there married the appellee, a 17 year old Greek girl, named Anna Funda, who soon thereafter returned with him to his home in Harlan, where she, it appears, henceforth lent a helpful and willing hand to both Margaretus and Kavinedus in conducting their partnership business up until about September, 1930, when discovering that her trusted Margaretus also had a flair for "the opposite sex" and was of "fickle and inconstant mind" and unfaithful to her, she filed suit for divorce upon such ground against him. She was adjudged a divorce, alimony allowance of $5,000 and costs (including attorney's fee of $300), and restored to her maiden name, which has since been changed, by her remarriage, to Anna Maglia, by which she herein appears as appellee.

Later these parties, the wife, Anna, assisted by her attorney, Margaretus, and an official of the defendant bank (Aldhizer), met at the bank, where they effected a cash settlement of a half part of her alimony judgment and costs, whereby Margaretus then paid her the sum of $2,500 and her taxed attorney's fee of $300 with such an amount, which was then loaned him therefor by the bank and for which he then executed and delivered it his note for $2,800 and interest of $9.75 and with which he then pledged and delivered the bank, as collateral security for its payment, one (the fourth) of the $9,000 purchase-money notes, which Dr. Wright had executed to Kavinedus and him as his vendors and payees for the hotel property sold him.

Further, Margaretus at the same time and place executed and delivered to his divorced wife, Anna, his note for the remainder of the alimony judgment in the sum of $2,500, due and payable on August 15, 1931, which was also by its terms secured in its payment by the further pledge therefor of the same $9,000 Wright lien note then delivered the bank and so provided by the terms of the note, reading as follows:

"$2,500.00 Harlan, Ky. Sept. 19th, 1930

"On August 15th, 1931 ——— days after date for Value Received, I promise to pay to Anna Funda at the Citizens National Bank, Harlan, Ky.,

Twenty five hundred and no/100 dollars without interest homestead and all other exemptions waived, having deposited with the said Bank as Collateral security for the payment of this note.

"Note T. G. Wright, dated 8/1/27 & due 8/1/31 $9,000.00 & Int. from date which is a lien note New Harlan Hotel, Harlan, Ky., on which the Citizens National Bank, Harlan, Ky., has a first claim for cash advanced for $2809.75 & int. and payee agrees that this note & collateral will be held in escrow for her by said bank.

"No. ———— Due 8/15/31

"Pete Margaretus
"P. O. ————"

This note thus delivered to and accepted by Anna from Margaretus in settlement of the balance due upon her alimony judgment was by her left with the bank, which held the pledged collateral note, for collection.

It further appears that Margaretus was at such time further indebted to this bank in the sum of some $2,000, represented by several other of his notes given it for different items of indebtedness, and for which it is admitted that the said $9,000 lien note was also pledged the bank as collateral.

Such being the situation with respect to the notes. and collateral pledged the bank therefor by Margaretus, his partner, Kavinedus, within a few days of the maturity of both the pledged $9,000 collateral note and the $2,500 note given the wife, Anna, filed his action at law against the pledgee bank, wherein he alleged, as stated above, that he was the sole owner of the pledged $9,000 Wright note and was entitled to recover its possession from the bank, for the reason or upon the ground that Margaretus, the pledger of the note, had offered to pay the amount of his indebtedness to the bank for which it was pledged, consisting, as stated, of the $2,800 note and his other notes amounting to some $2,000, and that he was then able and ready to pay the same, but that, notwithstanding his continued effort and offer to pay this said indebtedness, the bank had nonetheless wrongfully refused to restore him the possession of the lien note, upon the excuse given or contending that it was held as collat-

eral security by it for the payment of further indebtedness owing the appellee, Anna Maglia, by Margaretus, for which he had pledged it.

Plaintiff furthed pleaded that if Margaretus had, as claimed, pledged plaintiff's said lien note as collateral for such named further indebtedness owing by him to Anna Maglia, the same was done wrongfully and without his authority, and that he was entitled, as its owner, to recover possession of his lien note, free from any lien of appellee against the same, based upon such unauthorized and wrongful pledge of it by Margaretus to her therefor.

To such pleadings the defendant bank answered, alleging in substance the facts as set out supra, that Margaretus had, at the same time and occasion upon which Margaretus had executed the $2,800 note to it and pledged therewith, as collateral security for its payment, the $9,000 lien note in question, also executed and delivered the $2,500 note to the appellee, Anna Maglia, in payment of the remainder of his alimony debt owing to her, by the terms of which it was expressly provided that the note was to be secured by a lien on the $9,000 Wright note then pledged the bank and that, by reason of such pledge of the note, it alleged that Anna had a lien upon the pledged lien note for the payment of her said $2,500 note, which she had left with it for collection, as the holder and pledgee of the collateral note, securing the payment of Margaretus' indebtedness both to her and to the bank.

While it is later admitted by the plaintiff, Kavinedus, that when filing this action he then knew that the $2,500 note in question had been executed by Margaretus to the appellee, Anna Maglia, and that she was claiming a lien for its payment against the pledged collateral held by the bank and also that she was, as such lien claimant, a proper party defendant to this suit, seeking to recover the collateral note, he nevertheless had ignored her claim and declined to make her a party thereto, that there might be had a determination of the question of her claimed lien in the pledged collateral note he sought to recover from the bank.

Whereupon Anna, learning that plaintiff was at-

tempting to obtain possession of the $9,000 collateral note in his law action, without permitting a determination of her lien rights or interest therein to be made, filed her intervening petition, asking to be made a party defendant to the action, and making same an answer, counterclaim, and cross-petition thereto.

While appellant objected to appellee's filing of the intervening petition to be made a party, yet no valid ground supporting such objection being shown and both the ownership and right to recover possession of the $9,000 note being asserted by Kavinedus, under such circumstances it is apparent the court rightly held that Anna was, as a lien claimant on the collateral note, a necessary party to the action to have a determination by interpleader of her alleged lien rights in the pledged collateral which plaintiff sought to recover, and that she should be permitted to come in and set up her lien.

Also, upon being permitted to intervene, she at the same time filed motion to transfer the case to the equity docket, which the court also sustained, upon the ground that her interpleader, filed for the determination of her lien against the claimed note, presented only an equitable action, in seeking to enforce a lien not only on the pledged collateral note, but also upon the real estate securing the collateral note.

The appellant's contention is that no lien upon his alleged $9,000 land note was acquired through the action of Margaretus in having wrongfully pledged plaintiff's note as collateral for the payment of his $2,500 note executed by him to the cross-petitioner, Anna Maglia, for the reason that at the time it was pledged she, the bank official and Margaretus each and all knew that Kavinedus was then the sole owner of the $9,000 pledged note and that he had consented to its being pledged to the bank only for the agreed specific indebtedness of the $2,800 note and certain other of the notes aggregating some $2,000 owing by Margaretus to it. Further, Kavinedus asserts that the said parties at the time when Margaretus pledged the note knew that his purported assignment to Margaretus, his partner, of the four $9,000 lien notes, including the one here involved, was not intended by the parties to effect a transfer of the title to the notes or to make

delivery of the notes to him, but was only resorted to for the purpose of avoiding an attachment of them by the woman, Anna Franga, who was, at the time he was absent in Greece, suing him upon a breach of promise claim; and, further, that they knew that in August, 1929, or next following his purported assignment in December, 1928, of these notes to Margaretus, the latter had made an assignment to him of his full interest both as partner and joint payee in the notes.

On the other hand, the appellee, her attorney and certain officials of the defendant bank, as well as other officers of the Harlan National Bank, its trustee, all testify denying that the note pledged belonged to Kavinedus or that they had any knowledge of the alleged assignment by Margaretus of his interest therein to him, but, on the other hand, asserted that the appellee, when accepting the pledge of the note as collateral security for the $2,500 note executed her by Margaretus, believed him to be the owner of the note and fully authorized to pledge it as collateral therefor; and, further, that at the time the note was so pledged her, she not only was without knowledge of any infirmity in his title, but he appeared to be the sole owner thereof, not only by reason of the recorded assignment by Kavinedus of his partner's interest in the notes to Margaretus, but also for the further reason that the note, when pledged at the same time by Margaretus as collateral for both the bank's note and that of appellee, was in the possession of Margaretus and bore the blank indorsement on the back thereof of Kavinedus and Margaretus, then both partners and the named payees thereof.

Upon final submission of the cause, it was adjudged that the defendant Citizens National Bank, or its successor, the defendant Harlan National Bank, trustee, under said pledge first of the note to it by Margaretus as collateral, took a first lien against it or its proceeds to secure the payment of its $2,809.75 note for which pledged; also, that Anna Maglia (the appellee) took a second lien against same or its proceeds to secure the payment of her note of $2,500 with interest; and, further, that the said Citizens National Bank, or its stated trustee, has a lien against said note or the proceeds thereof to satisfy the balance of its said

indebtedness of some $2,000, evidenced by notes owing it by Margaretus, but that same was subsequent to the two liens first mentioned. Further, it was directed that the said trustee bank would first deduct from the $6,000 shown collected by it upon said note the amount of its $2,809.75 note with interest to the date of its collection effected upon the lien note, and that the said trustee would then pay to the said Anna Maglia the amount of her note of $2,500 with interest from August 15, 1931, to date of payment out of said collections; and that the balance of said collections thereon be applied to the remaining indebtedness due the said bank or its trustee successor.

Challenging the propriety of this ruling, the appellant first objects that the court erred in sustaining appellee's motion to transfer his common-law action, brought to recover possession of the specific lien note here involved, to the equity docket over his objections and in failing thereafter to submit an issue out of chancery, for the determination of the ownership of the note in question, which he contends was purely a question of fact, upon which he was entitled to trial by jury.

As to the first part of this objection, that the court erred in allowing interpleader to be filed and in transferring the case to equity, we consider it without merit, in that the issues presented by the interpleader for the determination of the question of the appellee's disputed claim of lien in the pledged collateral note and its enforcement against the real estate, against which the collateral lien note was given, were exclusively equitable in their nature and which, under the applicable provisions of sections 10 and 11 of the Civil Code of Practice, called for the transfer of the ordinary action in which pleaded to the equity docket for their determination. Newman's Pleading and Practice, (Vol. 1, 3rd. Edition) sec. 100, page 87.

Such appears in fact to be conceded by counsel for appellant in brief, but he yet insists that the court committed reversible error in failing to direct an issue out of chancery for a jury trial of the question of fact as to the disputed ownership of the pledged note.

Section 12 of the Civil Code of Practice provides

that an equitable action may be transferred to the ordinary docket for a jury trial on an issue of fact and section 312 of the Code further provides: (1) That issues of law must be tried by the court; and (2) that issues of fact in ordinary actions, except for injuries to person or character, shall be tried by the court, unless a jury trial be demanded by a party.

Here it would appear to be sufficient answer to say that even conceding appellant was entitled to have, upon his demand therefor, a jury trial upon the issue of fact as to the ownership of the pledged lien note, no such demand was made, and, having failed to ask for it, he cannot now be heard to complain that it was not granted him. Keith v. Walker, 221 Ky. 741, 299 S. W. 730; Young v. Duggins, 144 Ky. 618, 139 S. W. 847; Clark v. Isaacs, 182 Ky. 391, 206 S. W. 606.

Appellant next complains that the appellee and cross-petitioner, Anna Maglia, undertook to rely on a copy of a purported recorded assignment of the note involved by Kavinedus to his partner Margaretus in December, 1928, which copy he insists was incompetent evidence and insufficient to show title in Margaretus to the note pledged by him.

In disposing of this point, it is sufficient to say that whatever the motivating object or purpose of Kavinedus in making the writing, whether termed an assignment or bill of sale of the lien notes involved to Margaretus, it is immaterial in view of the fact that he admits having made the assignment, whether with intent to convey title or only for the claimed purpose of defeating his creditors or of fraudulently thereby removing his notes from reach by attachment of the woman, Anna Franga, whose claim he states he was undertaking to defeat, and therefore it is unnecessary to here inquire the purpose for the admitted assignment of the notes, the instrument having been signed and acknowledged as an assignment or bill of sale of the notes by Kavinedus before the United States vice consul in Greece and duly so certified by him and further recorded as such. The only question attaching to the assignment which could affect the appellee's claimed lien as a pledgee of the assigned note is the one as to whether or not she accepted the pledge in good faith and without knowledge of the claimed reser-

vation of title or equities therein by the assignor as against Margaretus.

The evidence as to this was conflicting, but certainly that given by the appellee and her witnesses, that she accepted the pledge of the note to her in good faith as collateral for the payment of the pledgor's $2,500 note at the time executed her, is, if not preponderating, yet amply sufficient to sustain the chancellor's so finding, and is not, therefore, to be disturbed by us.

The further question raised by appellant, as to whether or not this recorded assignment of the note involved, by Kavinedus to Margaretus, here its pledgor, was such an instrument as was properly recordable under the statute so as to endow its recordation with the effect of becoming constructive notice thereof, is not here important, as it is admitted that the appellee pledgee of the assigned note did in fact have actual notice of its assignment.

Further, it is undenied that, when Margaretus made the here challenged pledge of the note thus assigned him to both the bank and the appellee as collateral for his notes, then executed them in payment and a settlement of his indebtedness owing them, he at the time held possession of the pledged note not only as an assignee of record and as one of the named payee partners thereof, but further and perhaps of even more effective significance was the fact that the note bore the blank indorsement of both the named payee partners, Kavinedus and Margaretus. When so armed both with the possession and all the indicia of title and ownership of the note, it is shown that Margaretus then pledged the same as collateral to both the bank and the appellee, Anna Maglia.

Despite the evidence showing that the pledge was made under such circumstances and that the pledgor, when so armed with the appearance of ownership and the incidental right to dispose of the note by pledge or otherwise, delivered the note in pledge to both the bank and the appellee, Anna Maglia, as collateral for his debts owing them, appellants yet assail the trial court's ruling, upon the ground that the pledge, even if so made by Margaretus, was yet ineffective to impress a lien upon the pledged collateral, if Kavinedus was

then the real owner and did not authorize its pledge to appellee.

The rule of law is well settled that the status of a pledgee, acquiring under such circumstances a special interest in the pledged collateral as such, is that of a purchaser for value of the note and holds the same free from the equities or claims of a third person in the note, where he has, before its maturity, made blank indorsement of his interest in the note to pledgor.

The applicable rule as to this is thus stated in 21 R. C. L., sec. 24, p. 660:

"The holder of collateral security is, at least to the extent to which he had a right to its proceeds, to be regarded as a purchaser entitled to the same immunity against secret equities and unknown defenses as a purchaser would be, who acquired absolute title to the property under like circumstances. Therefore, if he acquires a note or other security in good faith and for value, before its maturity, no defense can be asserted against him arising out of want of consideration, or out of any other matter or equity of which he had no notice when he acquired the security. It may be that the person who transferred the security as collateral did not have the title thereto, or having title held it in trust, or for some special purpose not authorizing him to transfer it as he did. If such be the case, the validity of his transfer as collateral security must be determined by the rules applicable to absolute transfers. If the title to the property was so apparently vested in him that if he had transferred it to an absolute purchaser in good faith such transfer must have been sustained, then also must the transfer as collateral security be upheld."

As stated supra, the question here raised by the evidence, as to whether or not the appellee acquired in good faith the collateral by the pledge of Margaretus to her of it, was one of fact, which was found upon the conflicting evidence by the chancellor to have been so acquired. To like effect also is that status of the appellee and her rights in the acquired collateral pledged her as a purchaser for value thereof so de-

clared by section 3720b-27, Kentucky Statutes (Negotiable Instruments Law), that:

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

Further, section 3720b-52 provides that a holder in due course is one who takes the instrument when it is complete and regular on its face, before it is due, in good faith and for value and without notice of any infirmity and section 3720b-56 provides that:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

See, also, American National Bank v. J. S. Minor & Son, 142 Ky. 792, 135 S. W. 278; Elk Calley Coal Co. v. Third National Bank, 157 Ky. 617, 163 S. W. 766.

It is to be observed that the collateral note here involved was by the maker drawn payable to both Kavinedus and Margaretus, and that they were partners, and, further, that it bore the blank indorsement of each of them at the time Margaretus, who had possession of the note, put it in lien to the appellee by pledging it as collateral for the note he then executed her.

From the above considerations, it would appear further to follow that the defendant bank, having received from Margaretus a pledge of the note in question as collateral surety for payment of the $2,800 note then executed it, and also having received at the same time from the appellee, Anna Maglia, for collection the note executed by Margaretus to her for $2,500, with the direction or provision recited therein that it was to be secured in its payment by the like pledge of the same lien note, such transaction was effective to put the collateral note in lien for the payment of both notes, with the right in the bank pledgee to retain possession of the collateral note until both debts for which it was pledged were paid.

Kavinedus here sued the bank as a pledgee, alleging that it was wrongfully detaining or was converting his lien note pledged it by Margaretus after payment had been tendered or made in satisfaction of the debt. Such claim clearly ignored the rights of the appellee, Anna Maglia, to a like lien in the pledged note for payment to her of Margaretus' debt owing her, for which it was also pledged.

Clearly, for the reasons above indicated, plaintiff was not entitled to prevail in such contention against the bank's answer to such claim, that it was withholding the pledged note until appellee's debt, for which the collateral was also pledged, was paid, as the bank, as pledgee, was entitled to retain possession of the pledged note until both its debt and the appellee's debt, for which it was pledged, were satisfied. The pledgor must fully discharge all the debts secured by the collateral before he can demand the pledgee's surrender of its possession to him. Compare also National Bank of Kentucky v. Gallagher, 243 Ky. 740, 49 S. W. (2d) 1006.

After a very thorough consideration of the vexing questions here presented by the voluminous record, we are of the opinion that the chancellor's finding, being amply supported by the evidence, is not to be disturbed, and that his holdings of law based thereon being in harmony with our views as above expressed, the judgment is affirmed.